HANNAH S. CRAIG, BY HER NEXT FRIEND, &c., APPELLANT, vs. JAMES B. GAMBLE, APPELLEE.

1. A debtor in embarrassed circumstances will not be permitted to make a voluntary assignment or gift of his property, to the injury and detriment of his *bona fide* creditors.

2. The case of Mercer vs. Hooker, (5 Florida Reps., 277,) referred to, and the doctrine of the same sanctioned and affirmed, viz: " That where a bill of sale for property was taken in the name of the wife, but the purchase money had been paid by the husband, in the absence of proof that the money so paid belonged to the wife, neither her title nor the title of any one claiming

through her, will be permitted to defeat the lien of an execution against her husband."

This is an appeal from a decree of the Circuit Court of Leon County sitting in Chancery.

The appellant filed her bill in the Court below, alleging that she owned and possessed, in her own right, fifteen hogsheads of Sugar, which were levied on by the Sheriff of Leon County, under and by virtue of an execution in favor of James B. Gamble, against William P. Craig; that the said sugar was stored in the ware house of the Tallahassee Railroad Company, in her own name, and while there, was taken by the Sheriff. She claimed that the same was not subject to said execution, and prayed for an injunction, and that the levy might be dismissed.

The defendant, Gamble, in his answer, denied that the Sugar was the property of complainant, and he insisted that if she did own the Sugar, she did not own it *to her separate use*, free from the marital rights of her husband, (William P. Craig;) that William P. Craig raised and made the Sugar, and originally owned it, and if any pretended sale or transfer of it to complainant was made by him, it was voluntary and without valuable consideration, or it was intended to hinder and delay creditors. The defendant further alleged, by way of demurrer, " that by complainant's own showing, the said Sugar being her property, and not being alleged to be held by her to her separate use, became by law vested in her husband, subject to his debts."

The complainant offered in evidence a bill of lading, acknowledging the receipt, of William P. Craig, at Manatee, in South Florida, by William Blakeney, of nineteen hogsheads Sugar, for and on account of Mrs. William P. Craig, care of Beard & Denham, St. Marks, and also an assign-

ment by John G. Gamble to Hannah S. Craig and John A. Craig, of certain judgments against William P. Craig.

At the hearing of the cause, the following agreement in writing was entered into, viz: "That the Sugar in controversy in this cause, was raised by William P. Craig, husband of complainant, at Manatee, with the labor of himself and servants; that it was shipped by him to Mrs. Craig, complainant, and was stored in her name at the Railroad depot at Tallahassee; that it was shipped in 1852, and reached the Tallahassee depot before the 3d day of December, 1852; that John G. Gamble, who executed the transfer (in evidence) of judgments to John A. Craig and Hannan S. Craig, was duly empowered to transfer those judgments, and that the title and right thereto was and is legally vested in said John A. and Hannah S. Craig."

The Court below dismissed the bill, and the complainant prayed an appeal to this Court.

*Archer* and *Papy* for Appellant.

*Simon Towle* for Appellee.

DuPONT, J., delivered the Opinion of the Court.

This cause is brought up by appeal from a decree pronounced therein by the Hon. J. Wayles Baker, Judge of the Circuit Court of the Middle Circuit of Florida.

The complainant, Hannah S. Craig, by her next friend, Henry L. Rutgers, filed her bill in the Circuit Court of Leon County, on the 18th day of June, A. D. 1853, against the defendants, James B. Gamble and Haley T. Blocker, setting forth amongst other matters, that the defendant, Gamble, had caused an execution at law, which he held against one William P. Craig, (the husband of complainant,) to be levied upon fifteen hogsheads of sugar, belong-

ing to complainant "in her own right," and praying that the defendant Gamble, as plaintiff in execution, and the defendant Blocker, as Sheriff, be perpetually enjoined from further proceeding under the said levy, and that the same be dismissed. In accordance with the prayer of the bill, a writ of injunction was granted, directed to the defendants, and restraining them from any proceedings until the further order of the Court.

The defendant, Gamble, filed his answer on the 28th day of June, A. D. 1853, in which he denied all the material allegations contained in the bill, and particularly traversed the *title* of complainant to the hogsheads of sugar levied upon. This defendant also set forth in his answer special matter to be insisted upon by way of *demurrer*, at the final hearing, under that provision of the statute which recognizes and allows such practice; but in view of the decision to which this Court has come upon the merits of the case, it has been deemed unnecessary to consider those matters, or to pronounce an opinion in relation thereto.

A final hearing of the cause was subsequently had upon bill, answer, replication and proofs, and the evidence relied upon is to be found incorporated in the following agreement of counsel, which forms a part of the record before us, viz:

" MEMORANDUM.—At the hearing of this cause before Hon. J. Wayles Baker, at Chambers, on the     day of     , 1853, it was admitted by the parties, by their counsel, as follows, to-wit: That the sugar in controversy in this cause, was raised and made by William P. Craig, husband of the complainant, on his plantation at Manatee, with the labor of himself and his own servants; that it was shipped by him to Mrs. William P. Craig, the complainant, and was stored in her name at the Railroad depot at Tallahassee; that it was shipped by him on the day of     , 1852, as shown by the bill of lading in evi-

dence, and reached the Tallahassee depot on or before the 3d day of December, 1852; that John G. Gamble, who executed the transfer (in evidence) of judgments to John A. Craig and Hannah S. Craig, was duly empowered to transfer those judgments, and that the 'title and right thereto was and is legally vested in said John A. Craig and Hannah S. Craig."

The "bill of lading" referred to in the foregoing agreement, is a simple shipping receipt, signed by one William Blakeney, acknowledging to have received of "*William P. Craig*," "*for and on account of Mrs. William P. Craig*," certain hogsheads of sugar, together with some other articles of merchandize; and the "*transfer of judgments*," also referred to, is in the usual form, assigning certain judgments at law, which had been obtained in favor of the Union Bank of Florida, against William P. Craig, to Hannah S. Craig and John A. Craig.

This is all the evidence that was adduced at the final hearing of the cause, and upon this evidence, the Judge in the Court below, sitting as Chancellor, was called upon to determine whether or not the injunction which had been temporarily granted, should be made perpetual. '

We are of opinion that he decided correctly in refusing the prayer of complainant, and in ordering the bill to be dismissed with costs.

It is clearly manifest that, in the then state of the pleadings, the *title* to the sugar levied upon was the only point at issue. If it had been shown by the proofs that Mrs. Craig, the complainant, had legally acquired the ownership of the property, then might her title have been protected by virtue of the provisions of the statute enacted by our Legislature for the protection of the rights of married women. But we are of opinion that the evidence to this point entirely fails to show such a title in her as will override

the rights of creditors, and especially the lien of an execution creditor. What are the facts of the case, as admitted at the hearing? Why, that " the sugar in controversy was raised and made by William P. Craig, (the defendant in execution,) on his plantation at Manatee, with the labor of himself and his own servants." This, then, according to the well established principles of law, invested him with the absolute title to the same, as the fruit of his labor. When and by what means did he divest himself of that title? In looking into the record, we can find no evidence of a purchase by or sale to the complainant, or indeed to any other person; there is no proof of consideration or value passing from her to the owner, William P. Craig, and the only intimation of an intended change of property is to be found in the terms of the bill of lading, or shipping receipt, given by William Blakeney for the sugar in controversy. Now, by the very terms of the bill of lading, it is shown that the sugar was received of William P. Craig, the defendant in the execution, but for and on account of the complainant, his wife. This bill of lading, or shipping receipt, however it might tend, as a matter of evidence, to induce the impression that there had been or was to be a change of property in the sugar, from William P. Craig to his wife, certainly does not of itself afford any proof of a sale. The essential element of a *bona fide* sale is wanting —the *consideration*, and this is not supplied by any proof *aliunde*, so far as we have been able to discover. It is true that in the argument by counsel, it was insisted that the complainant, being a creditor of her husband, by virtue of the several judgments assigned to herself and John A. Craig, it was a legitimate presumption that the shipment of sugar embraced in the bill of lading was intended as a payment on account of that demand; but we can discover in the record no evidence which in the remotest degree

tends to connect those judgments with the shipment of the sugar. There is no evidence that any crédit for the value of the sugar, was ever entered upon those demands, or ever intended so to be. Neither the transcripts of the judgments nor the copies of the executions issued thereon are before us; but the transfer from John G. Gamble to the complainant and John A. Craig, stands in the record isolated and alone, unconnected by a particle of proof with the only point in issue, to-wit: The title to or ownership of the property in controversy.

If it be assumed that the shipment of sugar was intended as a *pledge*, the proceeds of which, when sold, were to pass to the credit of the transferred judgments, the reply is obvious—the bill contains no allegation of the kind, nor is there any proof in the record tending to support such an assumption.

In view, then, of the entire absence of any proof to show a sale or pledge of the sugar in controversy, from William P. Craig to the complainant, the Court is constrained to arrive at the conclusion that the title of the complainant is not of such a character as will defeat the lien of the execution held by James B. Gamble, the defendant. Giving to the bill of lading the utmost effect contended for by the counsel for complainant, it can at most only be viewed as a *voluntary* assignment, *without consideration*—a *gift* from the owner of the property embraced therein; and it requires no citation of authority to show that a debtor in embarrassed circumstances may not *give* away his property, to the injury and detriment of his *bona fide* creditors. The maxim that "a man must be just before he can be permitted to be generous," finds as ready a response in the breast of the moralist as it does in that of the enlightened jurist. It is based upon and finds its sanction in the purest morality—the fountain of all law.

However needless it may seem to attempt to fortify our conclusion in this case, by the citation of authority, yet it may not be improper briefly to refer to a recent adjudication by this Court of the point now under consideration. In the case of Mercer vs. Hooker, (5 Florida R., 277,) an execution at law in favor of William B. Hooker vs. Edward T. Kendrick, had been levied upon a horse in the possession of Mercer, as the property of the defendant in execution. Mercer interposed his claim under the statute, and upon the trial, traced his title from the wife of the defendant in execution. In the course of the trial, it was proved that the horse in controversy had been received in exchange for one for which Mrs. Kendrick held a *bill of sale*, and was afterwards sold to the claimant. It further appeared that although the bill of sale for the first horse was given to the wife, yet that the purchase money had been paid by the hands of the husband, and in the absence of proof that the money belonged to the wife, the Court very properly ruled that neither her title nor the title of any one claiming through her, would defeat the lien of the execution against her husband.

It will be perceived that in the view which the Court has taken of this case, it has not felt itself called upon to consider any one of the very interesting questions presented by counsel, as growing out of the act of the General Assembly entitled, " An act for the protection of the rights of married women," and however irrelevant to the merits of the present case, it is gratifying to reflect that the time consumed in listening to the very able arguments of counsel engaged on either side, has not been misspent. The very agitation of the subject will lead to useful results, in provoking investigation, and we may confidently hope that whenever a case shall arise bringing legitimately in review before the appelate tribunal this very important statute,

both the bar and the Court will be so much the better prepared to give such an interpretation to the act as shall command not only the sanction but the cordial approbation of the entire community.

Let the decree of the Court below be affirmed, with costs.