PROVOSTY, J.
Plaintiff was an experienced workman, of 15 years’ standing. He was molder and planer foreman, and in that capacity had charge of the workmen, machinery, etc., on one of the floors of defendant’s sash and door factory. He states that his further duty was “to fix belts and keep the machines in running order.” He had been in defendant’s employ some 14 months, discharging those duties, when he was called upon to mend one of the belts of one of the saw tables, and had four of his fingers cut off in attempting to do the work. As soon as his hand got well, he went back to his same work in defendant’s mill, at the same wages, and worked for some time, until he quit of his own accord. During this time he acknowledged that he himself was to blame for the accident. He denies that he made such admission, but three witnesses testify to it. Afterwards he changed his mind and brought this suit, 11 months after the accident.
The saw table in question is 5 feet long, 3 feet, wide, and 3 feet 6 inches high. It is a substantial structure; the framework underneath consisting of three thick uprights on each side, braced at top and bottom by thick crosspieces, both on the sides and on the ends. The saw — a circular saw, 14 inches in diameter — is under the table, the blade protruding through a longitudinal slit in the middle of the table. The belt to be mended is under the table, to one side, and near one of the ends. It could be reached for mending, without any danger from, the saw, from that side of the table on which it was, and from either end of the table. Plaintiff chose the other side of the table, from which he could not reach the belt without stretching his arms across the line of the saw. He got down on his knees, and put his head and arms into the framework of the table. Thd saw was then above him, to his right. What ho did while in this position, and what happened, we will let him describe himself: “I got hold of the belt and commenced to lace it, and I was pulling on it, when the lacing, string got caught in some way, and I could not pull it very easily. So I took a good hold of it, and I wrapped it round my hand or fingers as a man usually does when he wants to pull hard, and I pulled with .all my might-with my hand, holding it down with the other; and when I pulled so hard the lacing string broke, and it broke with such force that my hand flew up and struck against the saw, that was running, and it took my fingers off.”
The negligence charged against defendant is alleged to have consisted in—
(1) That the saw was running at an excessive rate of speed.
(2) That it was not properly hooded or guarded.
(3) That the machine was not geared with a countershaft, so that it could be stopped without stopping the entire machinery of the mill.
(4) That the place was not sufficiently lighted.
(5) That rubbish-had been suffered to accumulate near the table, ^hereby access to the belt was cut off from the safe side of the table, and plaintiff was put under the necessity of doing the work from the dangerous side.
Plaintiff’s argument on the first ground is that, if the speed of the machine had been less, the belt might have held out until a time when there might have been no rubbish to prevent his doing the work from the safe side, and that in that event he would have escaped injury. Here, in truth, is a string of conjectures. But assuming them all to be established facts, the simple legal answer is that after the belt had given way, and thereby lost its connection with the machine, the speed of the machine ceased to be' an element in the problem, and that therefore, as a cause of the injury, the breaking of the belt stands in the same relation to what fol *571 lowed as does any other antecedent, conditional fact — as the fact, for instance, that plaintiff was born. Had the belt not broken at the time it did, there would have been at that time no belt to mend, and no injury; and so, had plaintiff never been born, there would have been no plaintiff, and no injury. One group of causes in the chain of causation culminated in the breaking of the belt. Another group was set in motion by the attempt to mend the belt. Juridically the two groups are entirely disconnected, and the law looks only to the latter — in other words, to the immediate or proximate cause. Schwartz v. Railroad Co., 110 La. 534, 34 South. 667.
The second ground is equally without merit. The evidence shows — and besides the fact is of itself patent — that the framework of the table is a sufficient guard to the portion of the saw under the table, which is the part that did the injury. It would be exacting too much of an employer to require him to protect such inner and inaccessible parts of machinery, with which no one can come in contact except by such imprudent conduct as that of plaintiff in this ease.
As to the third ground, nothing shows that it is negligence not to gear machines like the one in question with a countershaft. The testimony would go to show that machines which run continually are not usually so geared, and that the machine in question ran continually. Furthermore, the testimony shows that this machine is provided with an idler, by means of which it can be disconnected from the rest of the machinery of the mill just as effectually as by means of a countershaft. Beyond this, it appears that plaintiff had the right to stop the machinery of the mill, if necessary to avoid danger in the work of repair. If, therefore, he incurred any« extra risk, he did so voluntarily. If there is a safe and an unsafe way of doing a thing, and the servant knows it, or ought to know it, and chooses the unsafe, and is injured, he cannot recover against the master for the injury. Jenkins v. Maginnis Mills, 51 La. Ann. 1011, 25 South. 643.
The complaint as to the want of sufficient light has not reference to sufficient light for the regular operation of the mill, but to sufficient light for doing with safety the work of mending the belt. Such being the nature of the complaint, the answer to it is obvious. The master is not bound to keep his premises so lighted that any and all repair work may be done without the necessity of procur/ing extra light. When plaintiff undertook to do this repair work, it was for him to know whether he had enough light to do it in, and to procure additional light if needed. • He was not a green hand, uninformed of the nature of the work he was called upon to do, but he was the person on his floor supposedly best informed in that regard. To him belonged the duty, in his own words, “to fix belts and keep the machines in running shape.”
If the rubbish was in plaintiff’s way for repairing the machine with safety, he should have asked that it be removed, or should himself have had it removed. He had ample authority for the purpose. In • fact, it was his duty to see to the removal of this rubbish if it stood in anybody’s way.
The judgment appealed from is set aside, and the suit of plaintiff is dismissed, with costs in both courts.