On the Merits.
LAND, J.
Thomas McCormick, employed as “elevator man” by defendant, the lessee of the St. Charles Hotel in the city of New Orleans, was on October 27, 1910, caught between the top of the elevator on which he was sitting, and the ceiling of the elevator shaft. The upper portion of his spine was fractured, and he died on November 5, 1910. ' His widow and five minor children sued for damages for the sufferings and death of the husband and father.
The petition alleged that the deceased Instructed the elevator boy to run the elevator to the seventh floor, but that the boy, operating the car negligently and carelessly failed to stop the elevator at the proper floor, and violently ran the ear up to and against the beams, thereby crushing the deceased, so that he died eleven days later, after suffering intense mental and physical pain. The petition further alleged that the elevator itself was defective and unsafe, and that it was not equipped with an automatic stop, by which the ear could and would have stopped after reaching the seventh floor.
*223 Defendant’s exception that the petition was vague, indefinite, and set forth no cause of action was overruled.
For answer, after pleading the general issue, the defendant averred that the elevator in question was equipped with an automatic stop and all other modern safety devices; that McCormick was in its employ, and among his duties was that of caring for the elevator and its equipment, and putting and keeping them in order; that the elevator boy referred to in the petition was at the time of the accident under the direction and control of said McCormick as to the work in which he was engaged, and that the boy and McCormick were at least fellow servants; and that, if there were any defects in the equipment of the elevator or any fault on the part of any servant of defendant, plaintiffs cannot recover because the deceased was guilty of contributory negligence in unnecessarily placing himself in a position of danger.
The case was tried before a jury, which, by a vote of nine to three, found a verdict for the plaintiffs in the sum of $15,000. The defendant has appealed.
McCormick’s duty as “elevator man” was to keep the elevator in repair and in good running order and he worked under the orders of Neilsen, the chief engineer of the St. Charles Hotel. The following extracts from the testimony of Neilsen, sworn as a witness for the plaintiffs, show what duties were performed by McCormick:
“No, sir; he did not run the elevators. He attended to them and repaired them. Well, he was under his own supervision and control when he was repairing elevators. He got his instructions in the morning, and attended to them during the day.”
The witness further stated that the elevator in question had not been in operation for several days, because “McCormick was repairing it,” and that it was his duty to adjust the automatic stops when found in a wrong position.
On the day of the accident McCormick was engaged in greasing the elevator slides, and called the elevator boy, and told him to run the car to the seventh and last floor. McCormick then ascended to the top of the car, and seated himself astride the cross-head. The ceiling of the elevator shaft was 60 inches above the seventh floor. When the ear stopped at any time at the seventh floor, the top of the cross-head was only 30 inches below the ceiling.
Brown, the elevator boy, sworn as a witness for the plaintiffs, testified that, when the car reached the seventh floor, McCormick said to him, “Let her go on up.' I want to see how far she can go before she stops”; that the car went up until Brown heard McCormick ' cry out that he was jammed, and thereupon Brown lowered the car as rapidly as possible to the fifth floor, where McCormick was taken down from the top of the car by two painters, who were working near the elevator shaft. Both of the men testified on the trial of the case as to statements made by McCormick and Brown immediately after the accident. One version is that McCormick said:
“I hollered for him to stop and he went up too far. He didn’t stop. He went up too high.”
The other version is that McCormick said that:
“He told the fellow to stop at the seventh floor, and the fellow said he couldn’t.”
Both witnesses agree that Brown said that it was not his fault — the elevator was out of order.
It is not probable that McCormick, after the car reached the seventh floor, told Brown to go higher, because McCormick’s head had already reached the ceiling, and a further upward movement of the car would have endangered his life.
*225 It is reasonable to presume, under the circumstances of the case, that Brown failed to stop the car at the seventh floor. As the elevator proper was in good condition a few minutes after the accident, as testified by two experts, it is fair to presume that Brown was in fault in not stopping the car at the seventh floor.
It is admitted that the lower ball on the automatic cable was 10 or 12 inches out of place. This ball affected the operation of the elevator at the top of the shaft. Defendant’s chief engineer testified that the effect of the slipping of the ball was to give the car a little more speed above the seventh floor, that the purpose of the automatic stop was to lower the speed of the car just before reaching the top or bottom of the shaft, and that the car would go within six inches of the ceiling, with or without an automatic stop. The elevator in question was made by the Otis Company, and was operated by hydraulic power. Mr. Wilkie, the superintendent of construction of said company, was called as a defense witness, and testified that he examined the elevator in question on the day of the accident, found it in good condition, and that the car could stop at the seventh floor. He further testified that the elevator was equipped with an automatic stop, and explained the practical working of that apparatus.
It appears from the testimony of this expert that the shutting off of the automatic stop valve slows down the speed of the elevator so as to prevent jars at the top or bottom of the shaft, but does not affect the limits to which the car can go in its ascent or descent.
The expert, on cross-examination, testified as follows:
“Q. Now, with regard to these automatic stops, what is their purpose?
“A. To close off the flow of water at the top or bottom or the extreme travel of the piston.
“Q. As I understand it, you said that it was to prevent the jolt which is caused by the machine running to the extreme, and the piston being struck?
“A. Yes, sir; if you would allow that to happen, you would feel a terrible jolt in the car, and are liable to break the piston.
“Q. For that purpose, how far is it necessary to place the automatic stop from the extreme point of stoppage?
“A. Just so it will cut the water off completely or bring it to a very soft rest.
“Q. Or bring it to a very soft rest?
“A. Yes, sir.
“Q. In other words, if the automatic stop is such that the elevator will come to a stop anywhere above the seventh floor in this hotel, before the piston is struck, does it or does it not accomplish its purpose?
“A. Yes, sir; it does accomplish the purpose, that is what they are there for.”
There is nothing in the evidence tending to show any jolt or jar on the occasion in question. McCormick was jammed between the top of the ear and the ceiling, and this would have happened however slowly the car moved above the seventh floor. It is not shown that the ball on the automatic cable was displaced before the accident, or that the displacement contributed to the injury of the deceased.
The evidence shows beyond question that McCormick at the time of the accident was occupying unnecessarily a very unusual and dangerous position on the top of the elevator. When the car reached the level of the seventh floor, McCormick was sitting astride of the cross-head, which was only 30 inches below the ceiling of the elevator shaft. He leaned forward to avoid injury, and while in that position was jammed against the ceiling. McCormick could have found a safe place on the lower part of the top of the car; but he unnecessarily exposed himself to dangers, which attend the operation of all elevators. McCormick was an experienced elevator man, and should have known that he was in a position of great danger in the event of accident to the machinery or carelessness on the part of the operator of the elevator.
“If there is a safe and an unsafe way of doing a thing, and the servant knows it, or *227 ought to know it, and chooses the unsafe, and is injured, he cannot recover against the master for the injury.” Shoultz v. Eckardt Mfg. Co., 112 La. 568, 36 South. 593, 104 Am. St. Rep. 452.
[2] As to the condition of the elevator and Its equipments, McCormick knew more than his employer and the chief engineer, and was responsible to them for all defects in the machinery, which he could have discovered and remedied by the exercise of due diligence. The boy was under McCormick’s order, and was assisting him in the work of greasing the slides of the elevator. The car and the boy were necessary adjuncts to the work in which McCormick was engaged. It has been held that a foreman assumes the risk of injury from the negligence of a servant under his control. Linemueller v. Arthur, 127 La. 500, 53 South. 732, Ann. Cas. 1912A, 1008.
[3] If McCormick was not a vice principal, he and the elevator boy were fellow servants engaged in the same work under the same common employment.
After a careful review of the evidence, we conclude that the verdict and judgment below are clearly contrary to the law and the evidence. We cannot perceive wherein the defendant has been guilty of negligence in relation to the elevator or any of its equipments. The deceased was hired to repair the elevator and keep it in good running order. If he failed in this duty, the fault was his own. If the elevator boy was negligent, the deceased was also negligent, and the accident was caused by the fault of both. We see no good grounds in law or in equity for- affirming the verdict and judgment below.
It is therefore ordered that the verdict and judgment below be reversed, and it is now ordered that plaintiffs’ suit be dismissed, with costs.