PROVOSTY, J.
Either from defective condition of the track, or too great speed, or overloading, a number of the cars of the log *476 train of the defendant company, loaded with logs, ran off the track. For getting the cars back on the track two iron appliances, called frogs, are used. One of them is placed on the inner side of one of the rails; the other, on the outer side of the other rail. The wheels mount them, and are by them shunted to the rails. The one on the outer side of the rails is turtle-shaped — flat-bottomed and dome-topped. For being held in position while the wheel ascends it, it is provided underneath with spikes, which sink into the wood of the cross-tie under the weight of the ascending wheel.
Plaintiff was the conductor of the train. While the car was being pulled up, he held his foot against the outer frog. One of the logs fell upon him, breaking his thigh, and bruising him painfully.
Defendant contends that for this great misfortune which befell him he is himself to blame; that he knew very well that logs are liable to fall from these log trains while in motion; and that, therefore, when he placed himself so close to the car that, if a log fell, it would fall upon him, he voluntarily incurred the danger from which he suffered.
[1, 2] Plaintiff’s contention is that the spikes underneath the frog had flattened out or been broken, so that it was necessary for him to hold it in position with his foot in the manner he did; that this defective condition of the frog was due to the negligence of the defendant company, because he had notified the defendant company of it, and the defendant company had failed to provide another frog, or to repair this one, although promising to do so; that the master owes the servant the duty .of providing safe appliances to work with; and that a servant using a defective appliance after the master has promised to repair it may recover for an injury resulting from the defect of the appliance.
Plaintiff had had .charge of this train as conductor for two months, and, previous to that, had been brakeman on it for six months, and the danger of logs falling from moving log trains, is well known to those operating these trains. Plaintiff, therefore, cannot plead ignorance of this danger, and we do not understand him as doing so; nor of the fact that this danger is greater when a car is being shunted back on the track with more or less of a jerk than when it is being moved on the track. By occupying this position, therefore, he assumed this risk, and the question must simply be whether his doing so was a necessary part of his duty.
The evidence shows, we think, that if, as a fact, this frog was defective, as contended, plaintiff could easily have had it repaired, or procured another. But, leaving that aside, it is not shown why plaintiff should have had to hold this appliance in position with his foot, and not in some other less dangerous way. He says he had done it before, and had frequently seen others do it; but this falls far short of showing any necessity for doing it. No attempt is made to show that this frog could not have been held in position by other means, or, indeed, that the use of it was the only way in which the cars could have been put back on the track. No necessity is shown, therefore, for using it, and still less for putting the foot against it.
Perhaps, if plaintiff had stood at a distance such as experience in such cases might have given him reason to believe was safe, and as a result of the defective condition of this appliance a log had flown out and hit him, this defective condition might have been looked upon as the sole cause of his injury. But, under the circumstances of this case, his imprudence in unnecessarily standing so near was manifestly a contributing cause, to say the least, and constitutes contributory negligence.
Plaintiff also says that, before beginning *478 the work of putting the cars back on the track, he took the precaution of examining them, and ascertaining that the logs had not been disturbed by the derailment, and were all in proper position. But this did not justify him in standing so near, since he knew that the fact of logs being in appearance safely loaded is no guaranty against their falling.
[3] His learned counsel argue that:
“The proximate cause of an injury is the efficient cause; that is, the one that sets the other causes in motion which produce the injury.”
And they say that in the instant ease this proximate cause is to be found in the bad condition of the track and the overloading of the cars.
If it be conceded that the defective condition of the track, or the overloading of the cars, caused the derailment, and that this was due to the negligence of the defendant company, this negligence could have been the proximate, or legal, cause of the injury only if the injury had occurred while the derailment was in progress, or, in other words before the physical forces set in motion by it, or, let us say, by the bad condition of the track, or the overloading of the ears, had come to rest. After these physical forces had come to a complete rest, what occurred subsequently was not caused by them, but by some other operating agency. The situation of the cars after the derailment was nothing more than a condition upon which these subsequent agencies operated. Schoultz v. Eckardt Mfg. Co., 112 La. 568, 36 South. 593, 104 Am. St. Rep. 452.
We do not wish to be understood as holding that an employé is justified in knowingly using a defective instrument, tool, or appliance, taking the risks, simply because a promise has been made by the employer to repair the instrument or to furnish another. It has not been necessary to pass on that point, and we have not done so.
The judgment appealed from is set aside, and the suit is dismissed, with costs in both courts.