PEARL E. DAVIS, APPELLANT, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLEE.

FILED MARCH 13, 1920.    No. 20818.

1. **Master and Servant:** INJURY TO SERVANT: ASSUMPTION OF RISK. Where, in a railroad repair shop, the master has prescribed no particular means whereby the workmen shall climb upon locomotives undergoing repair, but the workmen, when required to take off or replace parts of such engines, have always climbed thereon by means of projecting parts of the engine and cab, an experienced workman, accustomed repeatedly each day to climb upon engines by the use of such means, must rely upon his own judgment in selecting handholds, and assumes the risk thereof.

2. ———: ———: NEGLIGENCE OF FELLOW SERVANT. Under the federal employers' liability act a railroad company is liable to an injured employee for negligence causing such injury, although such negligence is attributable to a fellow servant.

3. ———: ———: ACTIONABLE NEGLIGENCE. Where an experienced workman in a railroad repair shop, in replacing a part of a dismantled locomotive, uses as a handhold in climbing thereon a loose pipe placed or stuck upon a projecting bolt, mistaking it for a stationary part of the engine, and falls and is injured by reason of its giving way, the placing of the loose pipe in such position by a fellow servant of the injured workman does not constitute actionable negligence, where the circumstances are such as to require the injured workman to rely upon his own judgment in the means employed in climbing upon the engine, and where the risk of injury therefrom has been assumed by him.

4. ——: ——: DUTY OF MASTER. A master is not an insurer of his servant's safety, but is required to use ordinary care in providing him with a safe place to work. When the master provides sufficient light for ordinary purposes, and, in addition to the general lighting of the premises, provides portable individual lights for the use of his servants, when, in their judgment, such lights are needed, the master's duty in that regard has been fulfilled.  -

5. ——: ——: APPLIANCES. Where an experienced workman, under circumstances which require him to rely upon his own judgment in selecting the means of climbing upon an engine, is injured by the giving way of a loose pipe, which, on account of the dimness of the light, he has mistaken for a firm handhold, the sufficiency of the light for his purpose enters into the exercise of his judgment; and, where it appears that more light was available if he had called for it, lack of sufficient light cannot be made the basis of recovery in an action against the master for alleged negligence.

6. Negligence: ACTION: DIRECTION OF VERDICT. When the evidence, viewed in the light most favorable to the plaintiff, fails to establish actionable negligence, it is the duty of the trial court to direct a verdict for the defendant.

APPEAL from the district court for Lancaster county: WILLIAM M. MORNING, JUDGE. *Affirmed.*

*Wilmer B. Comstock,* for appellant.

*Byron Clark, J. L. Root* and *Strode & Beghtol, contra.*

DORSEY, C.

Action for damages for personal injuries under the federal employers' liability law (35 U. S. St. at Large, ch. 149, p. 65) by a mechanic employed in the defendant's repair shops. At the close of plaintiff's evidence, and again after both parties had rested, the defendant moved for an instructed verdict. The trial court sustained the motion and directed a verdict for the defendant. From the judgment entered thereon the plaintiff appeals.

The plaintiff was, as he described it in his testimony, a steam-pipe fitter's helper. His work consisted of putting in steam-pipes on locomotive engines, putting on throttles and other parts. His work was then in the wrecking department, and in the course thereof he, with

other workmen under the direction of a foreman, would strip the engine and take off the throttle and other parts, put them temporarily on racks or benches, and afterwards replace them on the locomotives. It was frequently his duty to climb upon the engines and in and out of engine cabs. Prior to the accident he had worked in the defendant's blacksmith shop about six or seven months, and in the wrecking department of the repair shop about two months.

About 8 o'clock in the evening of November 23, 1916, he was working upon a dismantled locomotive and was ordered by the foreman to assist in putting in place the throttle lever. This was to be attached to the rear end of the boiler, where it projects under the roof of the engine cab. It was necessary for him to climb into the cab in order to be in position to do this work. The only means of climbing, as he said, was to take hold of the edge of the cab, place his feet upon such parts of the engine as would furnish a foot-hold, and grasp and pull himself up by such projecting parts as would afford a handhold. The plaintiff testified that he climbed upon the platform below the firebox, three or four feet from the floor, and reached for what he supposed was the throttle stem (a rod which extends out about a foot from the rear end of the boiler and to which the throttle lever was to be attached). He claims, however, that he got hold of a loose piece of pipe about a half-inch in diameter, which had been placed or stuck upon a projecting bolt in such manner as to extend out from the rear end of the boiler, and which he mistook for the throttle stem because it was too dark for him to distinguish accurately. As he grasped the pipe it gave way and slipped off, causing plaintiff to lose his balance and fall backward, whereby he fell to the floor and was injured.

The testimony of the plaintiff with regard to the lighting in the room was in substance as follows: There were arc lights hung near the ceiling which, because of the roof of the engine cab, did not throw light inside there-

of. There was a torch near the front end of the cab three or four feet too far forward to throw light upon the end of the boiler where plaintiff was to adjust the throttle. He did not particularly notice the absence of the light in the room when he went to work that night and made no complaint about it. There was light enough, he said, for him to see the projecting object which he mistook for the throttle stem, but not light enough to tell what it was. The room was about as well lighted as on other nights when he had worked there, perhaps a little darker than usual. The defendant provided extension lights attached to a cord, which could be plugged in below the engine for the workmen to use when needed. He had seen others use them, but had never used nor asked for one himself.

Several witnesses for the defendant who were working in the same room at the time disputed the plaintiff as to the lighting. They testified that there was a separate electric light inside the cab shining directly upon the rear end of the boiler. Plaintiff testified that as he fell he threw over his head the pipe which he had grasped by mistake and which he mistook for the throttle stem. No witness except the plaintiff saw this pipe, according to their testimony. The plaintiff testified that after the accident he told the foreman and some of the other workmen about this pipe and showed them where it had been stuck onto the boiler. This was denied by the foreman and the other workmen who testified.

This case is governed by the federal employers' liability act. In order to recover, the plaintiff must show that his injuries were caused by some act of negligence on the part of the defendant. The allegations of negligence, upon which he must rely, as disclosed by the pleadings and evidence, are (1) that the placing of the loose pipe on the end of the projecting bolt, presumably by a fellow workman, so as to resemble the throttle stem, and thus mislead the plaintiff into using it as a handhold, was actionable negligence; or (2) that the lights

furnished by the defendant in the workroom were so in-
sufficient as to constitute a failure on its part to fulfil
its duty of furnishing the plaintiff with a safe place to
work.

The answer of the defendant consisted of a general
denial of negligence, and a plea that plaintiff had as-
sumed the risk.

In determining whether the trial court was justified
in withdrawing the case from the jury and directing a
verdict for defendant, the question is whether the evi-
dence, interpreted in the light most favorable to the
plaintiff, was sufficient to make out a case of actionable
negligence. Unless it can be said, as a matter of law,
that no actionable negligence was made out, the issue
should have been submitted to the jury. We believe the
trial court was right in holding that no actionable neg-
ligence was shown.

In reaching this conclusion we are mindful of the fact
that under the federal law the railroad company is liable
even if the plaintiff's injuries were caused by the negli-
gence of a fellow servant. If the placing of the loose
piece of pipe on the bolt or stud, as testified to by plain-
tiff, constituted negligence causing his injury, it was the
negligence of some fellow servant of plaintiff who placed
it there, and for this the defendant would be just as
liable as if it had been placed there by a vice-principal.
But we cannot assume that it was negligence simply be-
cause it caused, or may have caused, the accident. If it
was included within the scope of the risks assumed by
the plaintiff in the usual and ordinary course of his em-
ployment, it could not constitute actionable negligence.
If he was subjected to no greater risk than those just
indicated, his employer was not negligent. Did the plac-
ing of the piece of pipe where the plaintiff said he took
hold of it create an extraordinary danger not normally
incident to his employment? Or was it one of those dan-
gers that by the use of ordinary care would have been
known to a workman of his age, experience and under-
standing?

The plaintiff was not obliged to use the piece of pipe, or, as he supposed, the throttle stem, as a handhold; there was no particular and exclusive method of climbing upon the engine provided by his employer. The plaintiff himself says: "You had to grab hold of anything you could get hold of to get up in there," and "You get in and out the best way you could." He had climbed in and out of the cab many times each day, and was perfectly familiar with the construction and parts of the engine that he worked on.

In *La Londe v. Soderberg,* 96 Neb. 118, which was a case wherein a carpenter was injured in the erection of a building, the employer "made no attempt to prescribe the manner or furnish the means by which the men should ascend or descend to or from the attic of the building. He had left it with the plaintiff himself to determine how he should climb up and down." In that case the workman was injured by reason of taking hold of a loose board in descending from the scaffold, and it was held that the workman "is required to use such means in climbing up and descending from such building as his own judgment and convenience may suggest." We think that principle applies to and is decisive of the question under consideration. The plaintiff was required to use his own judgment in selecting handholds, and ordinary care on his part required him to test the strength of the handhold which he selected before throwing his weight on it. The danger of its giving way was, therefore, a risk assumed by him, and actionable negligence on the defendant's part could not be predicated upon it.

The question remains whether the room was so defectively lighted as to be an unsafe place to work. We think the evidence is conclusive that there was sufficient light to exonerate the defendant from any charge of negligence in that regard. The defendant was not required to keep every part of the room and every object in the room so brightly illuminated as to exclude all possibility of accident, only to exercise reasonable and ordi-

nary care with respect to the lighting of its workroom, in order that the safety of its employees might not be imperiled by lack of reasonable provision for lighting.

The plaintiff's testimony discloses that the room was lighted by electric arc lamps, and that there were special facilities for individual lights equipped with extension cords for those workmen who needed them. There was light enough for the plaintiff to see the projecting pipe which he mistook for the throttle stem. The law required him to rely upon his own judgment in depending upon it as a handhold in climbing into the cab. The sufficiency of the lighting for this purpose was one of the elements that entered into the exercise of his judgment. The defendant was not an insurer of his safety, and the obligation to use reasonable care for the safety of its workmen did not require it to have every part of the engine that he was using as a handhold or a foothold so brightly lighted that an error of judgment on his part would be impossible, especially in view of the undisputed fact that more light was available, if, in his judgment, it was necessary. It was not a case where he had asked for better light and had been refused.

The rule that we think applies in a situation such as the record of this case presents is well stated in *Schoultz v. Eckardt Mfg. Co.*, 112 La. 568, 104 Am. St. Rep. 452: "The master is not bound to keep his premises so lighted that any and all repair work may be done without the necessity of procuring extra light. When plaintiff undertook to do this repair work, it was for him to know whether he had enough light to do it in, and to procure additional light if needed. He was not a green hand, uninformed of the nature of the work he was called upon to do, but he was the person on his floor supposedly best informed in that regard."

For the reasons stated, we think the trial court was right in holding, as a matter of law, that no actionable negligence had been proved, and we recommend that the judgment be affirmed.

PER CURIAM. For the reasons stated in the foregoing opinion, the judgment of the district court is affirmed, and this opinion is adopted by and made the opinion of the court.

AFFIRMED.