LAND, J.
This is a suit for damages for personal injuries sustained by the plaintiff while in the employment of the' defendant company. The case was tried before a jury, which found a verdict in favor of the plaintiff for the sum of $12,500, and from the judgment pursuant thereto the defendant has appealed.
Plaintiff was employed as a stenographer and clerk in the office of the defendant at the town of Eros in this state. Within and forming a part of the office was a brick vault for the safe deposit of books, papers, money, and other things of value. In this vault there was stored at the time of the accident a number of bags of celluloid checks or chips representing money. An ordinary kerosene lamp was furnished and used for the purpose of lighting the vault when necessary to find books or papers. The lamp and matches were kept on a shelf in the vault. On September 7, 1007, defendant’s timekeeper entered 'the vault for the purpose of getting certain coupon books, and soon after he left the vault a slight smoke was discovered therein. 1-Ie, thereupon, threw a part of a bucket of water on the smoke and hastened out of the office to get more water. Plaintiff then seized a wash basin containing water and ran to the door of the vault, and just as.she threw the water within there came a flash or explosion, which set her hair and clothing on fire. The men of the plant smothered the flames; but plaintiff’s chest, arms, shoulders, face, and head were badly burned.
The petition charges that the defendant was guilty of negligence in storing in the-vault such a large quantity of cheeks made' of a substance or composition highly inflammable, combustible, and explosive, without giving notice or warning to the plaintiff and to-other servants whose duty it was to enter said vault. In an amended petition the plaintiff charges that the defendant was also-guilty of negligence, under the circumstances, in not providing a safe mode of lighting the-vault, and that the immediate cause of the explosion was the carelessness of one Paul-son, the timekeeper of defendant, and not her fellow servant, in lighting the lamp with a match, and that either sparks flew off from said match, or said Paulson carelessly and negligently threw said match down, and caused the explosion and conflagration complained of in the original petition.
Defendant for answer pleaded the general issue, and specially denied that the alleged injuries were the result of any negligence on its part, or on the part of an agent or employe, for which defendant is responsible, and averred that the alleged injuries were the result of an unforeseen and unexpected accident, together with plaintiff’s own negligence, and that in attempting to extinguish the fire the plaintiff assumed all of the risk incident thereto, and that her acts were outside of and beyond the scope of her employment.
The defendant company had for. several years been using celluloid checks or chips as-the representatives of money.
These checks were paid out from day today in lieu of cash, and were used at the commissary stores, and, if not so used, were redeemed. Some six months or more before the accident, the company abandoned this-method of paying off its employés, and called in the checks. As the checks were redeemed, they were deposited in the vault. At the date-of the accident there were 10 or 11 bags of these checks on the floor in a corner of the- *745 •vault. On the morning of the accident the -vault was opened by Mr. Lea, the bookkeeper. Paulson, the timekeeper, whose office was at the commissary, entered the vault for the purpose of getting certain coupon books. ■That Paulson lighted the lamp or struck a match is a mere matter of inference. He was not called as a witness on either side. It is .admitted by plaintiff in her testimony, and proven by several other witnesses, that it ■was not necessary to light the lamp or strike .a match when a person knew the location of the books or papers he was seeking. Paul-■son went in and got the books, and, coming .out, stood at a desk, with his back to the open vault door, and checked off the numbers on the coupon books. What followed is narrated by plaintiff as follows:
“Just as he turned around to leave, we discovered that there was just a slight smoke in the vault, and we both ran to the little office adjoining that, and he picked up a bucket about half full of water and ran to the vault doo£ ánd threw it on the smoke, and then he went for more water on the outside, and I picked up a basin full of water in the room and ran to the vault door, and just as I threw it on the explosion came with such force that it almost knocked me down, and the flash set me and my clothes and hair on fire.”
If this statement be true, it is evident that there must have been a sudden ignition of the contents of the vault, and some kind of explosive force which drove the flames upward and outward against the upper parts of plaintiff’s body. The smoke, when discovered, was in one of the rear corners of the vault, and was too slight to excite much apprehension. The vault was filled with books, papers, and vouchers. There is nothing to show that the lamp was lighted by Paulson on that occasion, or that he lighted a match for the purpose of looking for the coupon books. The .allegation that the fire was started by sparks from or the flame of a match used by Paul-■son is a matter of inference or a theory to ae..count for the accident.
The only expert examined on the subject testified that celluloid is composed of gun cotton and camphor; the latter ingredient being used to counteract the tendency of the gun cotton to explode by reason of concussion ; that celluloid, while highly inflammable, is not combustible in the ordinary sense, as it can be ignited only by a flame, and is not considered as an explosive; that celluloid, in burning up, gives off gases 320 times its own volume, and, when the gases are given off in a room or space smaller than their volume, something like an explosion may be produced. The expert likened celluloid to common gun powder, which is not an explosive unless confined, but said that the combustion of the former produced more than double the quantity of gases.
The evidence does not show the origin of the fire which produced the smoke first observed by Paulson and the plaintiff. It is not even shown that the smoke was in the corner of the vault occupied by the bags of celluloid checks. In the absence of other assignable causes, it may be inferred that the fire came from the lamp or from a match. I-Iow we do not know.
The evidence shows that celluloid checks have been manufactured and used for a number of years as money tokens by sawmill and other business concerns.
It is commonly known that celluloid is highly inflammable, but the evidence shows it is not generally considered as an explosive. The pivotal question in the case is whether the defendant company was negligent in storing the bags of checks in the vault, where it was possible for them to become ignited.
In maintaining safe premises the master is not liable as an insurer, but bound only to the exercise of ordinary care. 4 Thompson on Negligence, (1904) § 3767.
“In applying this doctrine of reasonable care, it is well held that a master is not liable for injuries to his servant, resulting from an accident *747 of suck a character that reasonable men, proceeding with reasonable caution, would not ordinarily have foreseen and anticipated it such as an injury happening under very exceptional circumstances, although the precautionary measures, if taken, would have prevented it.” Id. 3774.
In Railroad Co. v. Lumber Co., 49 La. Ann. 1196, 22 South. 680, 38 L. R. A. 134, the court said:
“Negligence consists in a failure to provide against the ordinary occurrences of life, and the fact that the provision made is insufficient as against an event such as may happen once in a lifetime, or perhaps twice in a century, does not make out a case of negligence upon which an action in damage will lie.”
In the same case the court quoted approvingly the following extract from a decision of the Supreme Court of Wisconsin, viz.:
“The negligence is not the proximate cause of the accident, unless, under all the circumstances, the accident might have been reasonably foreseen by a man of ordinary intelligence, and prudence. It is not enough to prove that the accident is the natural consequence of the negligence. It must also have been the probable consequence.”
Tested by the above legal principles we do not see how plaintiff can recover in this case.
Plaintiff has failed to show that the defendant knew or should have known that the storage of the celluloid checks in the vault was likely to prove dangerous to its employes using the same in the ordinary course of business. No anticipation of such a danger was entertained by any one. The chance of the checks becoming ignited by the careless handling Of matches was very remote. The chances were much greater than the papers in the vault would catch Are from such a source. Both papers and checks were safe from fire in the absence of negligence on the part of one of the four trusted employes, including the plaintiff, who had the right to enter the vault. It is alleged that the negligence of Paulson, one of these employes, started the fire. This negligence consisted in the alleged negligent misuse of matches, which could have been handled safely with ordinary care. Could the defendant have-foreseen such negligent misuse by one of its servants?
It has been well held that a person is not guilty of contributory negligence in not anticipating that other persons will be negligent. Damonte v. Patton, 118 La. 530, 43 South. 153, 8 L. R. A. (N. S.) 209, 118 Am. St. Rep. 384.
The charge that the defendant was negligent in permitting the use of the oil lamp and matches in the vault is without merit.
We sympathize with the plaintiff in her affliction, but are constrained by the law applicable to the case to set aside the verdict and the judgment.
It is therefore ordered that the verdict and judgment below be set aside and reversed; and it is now ordered that plaintiff’s suit be dismissed, with costs in both courts.