In the case of State ex rel. Le Blanc v. Henry, 41 La. Ann. 908, 6 South. 807, the question is disposed of in the following summary way:

"The answer of the respondent suggests, however, a fatal defect in the proceedings, which puts it beyond our power to, grant relators relief, and it is that there appears to have been filed in the respondent's court no exception to his jurisdiction and that is a condition precedent to relief by prohibition."

In that case the restraining order was rescinded, and the prohibition refused.

To the same effect is the decision in State ex rel. Baker v. Judge, 43 La. Ann. 1119, 10 South. 179, where the court refused to issue a writ of prohibition.

The prohibition prayed for is refused, and the rule is discharged at relator's cost.

PROVOSTY, J., concurs in the decree.

O'NIELL, J., dissents.

DAWKINS, J., dissents for the reason that he is of the view that the plaintiff has not pursued the method for testing the sufficiency of the bond as provided in the Act No. 112 of 1916.

———

(86 South. 750)

No. 22841.

## MILLS v. ILLINOIS CENT. R, CO.

(Nov. 29, 1920.)

*(Syllabus by Editorial Staff.)*

1. Carriers ⬤⟿318(2)—Evidence held to show no negligence regarding lighting at station.

In an action for injuries sustained by a person crossing a railroad track at a station to meet an incoming passenger on another track, evidence *held* to show that defendant was not negligent respecting the number of lights and their arrangement around the station.

2. Carriers ⬤⟿323—Person stepping from station platform to cross-ties in meeting incoming passenger held negligent in not looking.

It was the duty of a person stepping from a station platform to the track for the purpose of crossing to meet an incoming passenger on another track to look where he was stepping, and he was negligent in not looking where the step was long and deep and he was familiar with the location and knew that cross-ties were there.

3. Carriers ⬤⟿286(1)—Not negligent where track, curbing, and platform were according to standards in general use.

Where a railroad track on which plaintiff was injured in stepping from the adjacent platform was built according to standard methods, with the cross-ties exposed for purposes of drainage and to show defects in the ties, and its location with reference to the curbing and platform was according to standards in general use, the railroad could not be charged with negligence.

Appeal from Twenty-Fifth Judicial District Court, Parish of Tangipahoa; Robert S. Ellis, Judge.

Action by Rolla J. Mills against the Illinois Central Railroad Company. From a judgment for plaintiff, defendant appeals. Reversed, and judgment rendered for defendant.

Hunter C. Leake, of New Orleans, and Bolivar E. Kemp and Carroll Buck, both of Amite (Blewett Lee and R. V. Fletcher, both of Chicago, Ill., of counsel), for appellant.

R., C. & S. Reid, of Amite, and R. M. McGehee, of Hammond, for appellee.

SOMMERVILLE, J. Plaintiff alleges that on the morning of September 26, 1916, about 4:30 a. m., he went to the station of the defendant company at Hammond, La., for the purpose of meeting his son, who was returning from the Mexican border, and that while there he met with an accident by which his ankle was broken, and that it was through

the fault and negligence of the defendant company.

The gravamen of his complaint is set forth in the following paragraphs copied from his petition:

"That the lights at said station are so placed that the ground on which petitioner was compelled to step is entirely shaded, and your petitioner was unable to see whether he was stepping down on the ends of the cross-ties projecting from the track or on the ground between.

"That, as a matter of fact, in stepping downward, petitioner stepped partially on the projecting end of a cross-tie, and, having failed to secure an even footing, wrenched and broke his ankle fell violently forward, and otherwise bruised and injured himself, as will be more fully hereinafter set forth.

"That petitioner's injuries were in no wise due to his negligence, but solely to the negligence of said railroad company in failing to maintain a safe and properly lighted approach to its trains.

"That the approach to the trains was and is, to the knowledge of the officers of said railroad company, unsafe and dangerous, and the defective lighting makes it more dangerous to persons finding it necessary to use same in order to meet trains arriving in Hammond at night."

There was judgment in favor of plaintiff and against defendant for $1,500, and defendant has appealed.

Although the negligence charged on the part of the railroad company was the failure to maintain a safe and properly lighted approach to its trains, there was also evidence introduced going to show that the roadbed was not constructed in a safe condition.

[1] As to the lighting of the depot and its surroundings, the evidence of several witnesses residing in Hammond and apparently disconnected with defendant shows that the lighting on the morning in question was as it had been for some time previous thereto and has been since, and that it is sufficient for the convenience and safety of the traveling public, which numbers from 100 to 125

persons per day at Hammond. One witness testified that—

On the "outside there are six clusters of two lights each under the eaves on each side of the depot, and on the west side of the depot there are five clusters of two lights each; in the way between the white waiting room and the baggageroom are two clusters of two lights each; in the way between the colored waiting room and the express office are two lights each; that the white waiting room and colored waiting room are lighted with electric lights, and the ticket office has about four or five lights in it."

In addition to the lights enumerated are some for the lunchroom, one or two pole lights, and two street lights. So that it would appear that there was ample light in and around the depot for those who were reasonably careful of their movements.

The station house has a brick pavement some 20 or 22 feet in width, with a stone curb along its whole front. It extends to within a short distance of the first track of the defendant company. It was on this track that plaintiff fell and was injured. The railroad company has a double track at Hammond, and to reach the car which plaintiff desired to reach he had to cross that first track. In doing so he stepped down about 15 inches and out about 32 inches to the end of a cross-tie, when, according to his own testimony, he made a "misstep" and put his foot only partly on the end of the tie, when his ankle was turned, wrenched, and broken.

Plaintiff testified that because of the faulty arrangement of the lights there was a shadow cast by the brick pavement and curbing, which shadow obscured the end of the cross-tie upon which he desired to alight.

In taking this long and deep step he was apparently negligent, for he answered as follows:

"Q. Now, when you stepped down off this brick platform, did you see the cross-ties on the track? A. No, sir. Q. Do you know any reason why you did not see the cross-ties? A.

No, no; I stepped down there. Q. Well, I say, do you know any reason why you did not see the cross-ties? A. Why, no. * * * Q. You stepped over the end of the cross-ties? A. I stepped over the end of the cross-ties. Q. When you stepped over, you purposely stepped on the end of the cross-ties? A. We all step on the cross-ties. Q. You put your foot on the tie? A. A part of it. Q. You saw the tie when you stepped on it? A. I don't know. Q. Sir? A. I knew there were ties down there. Q. I asked you the question, did you see the tie when you stepped on it? A. Well, I saw the tie when I tried to step on it."

[2] It was the duty of plaintiff to have looked where he was stepping, as he was familiar with the location and knew that the cross-ties were there. His daughter, who was with him, crossed the track at the same time and place, and she was not injured. And there were many others who crossed that track at the same time with plaintiff without injury to themselves. The evidence clearly shows that defendant was not negligent in the number of lights and their arrangement around the station.

It was a very long and deep step that plaintiff was making, and it behooved him to see exactly where he was stepping. And he was negligent in not looking.

The weight of the evidence is to the effect that the ends of the cross-ties were not in shadow, as the shadow from the curbing only extended to the ends of the cross-ties. Plaintiff admits that at the time of the accident he stated to some one who interrogated him:

"I told him I must have missed my step and I stepped partly on the tie and broke it (the ankle) that way."

[3] It cannot be held from the evidence in the record that defendant was altogether guilty of negligence in leaving the ends of the cross-ties exposed, and some four. inches above the level of the ground. It was testified that the road was built according to standard methods, and that the purpose of having the cross-ties exposed was for drainage and to discover where there are defects in the ties. And there was testimony to the effect that the location of the track with reference to the curbing and platform was according to standards in use generally.

This being the case, defendant cannot be charged with negligence in thus providing a reasonably safe platform with egress to and from its trains.

In Chicago, Rock Island & Pacific Ry. Co. v. Owens, 118 Ark. 467, 177 S. W. 8, it is said:

A carrier of passengers need exercise only "ordinary care in providing station platforms that will secure the safety of passengers, in so far as such" degree of "care can do so, against any injury that may result in the use of" platforms.

And Mr. Thompson, in his work on Negligence, says in article 3059, vol. 3:

"While the carrier of passengers is bound to keep his stations, platforms, and passageways in a reasonably safe condition for the use of passengers and intending passengers, yet this does not absolve such passengers from the obligation of exercising ordinary care for their own safety. It follows that no recovery can be had by a passenger for an injury sustained by falling over a raised portion of a railway platform where the accident was produced by his failure to exercise ordinary care."

Also, in Colorado & S. Ry. Co. v. Sonne, 34 Colo. 206, 83 Pac. 383, it is said:

"A railroad company owes to a person in its yards on lawful business the duty of having its premises in a reasonably safe condition and to prevent injury to him from any unusual danger; but this obligation does not require it to make the place absolutely safe."

And in the case of Chicago, Rock Island & Pacific Ry. Co. v. Owens, supra, the court further said:

"' * * * The well-reasoned cases recognize the distinction and affirm that a railroad company that exercises ordinary care in constructing and maintaining station buildings and appurtenances in a reasonably safe condition

for use is not guilty of negligence.' Elliot on Railroads, vol. 4, § 1590."

Without further statement or analysis of the testimony, it does not seem that the defendant was shown to be guilty of actionable negligence, and there is very grave doubt whether the plaintiff was in the exercise of due and reasonable care, for if he had been, and if he had looked before stepping down and out, it would seem that he would have crossed the track in safety.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of defendant, dismissing plaintiff's suit at his costs.