No. 9526
Orleans

---

HARRY JONES, Appellant, v. JAHNCKE SERVICE, INC.

---

(October 5, 1925, Opinion and Decree)

(October 19, 1925, Rehearing Refused)

(December 1, 1925, Writ of Certiorari and Review denied by Supreme Court.)

---

(*Syllabus by the Court.*)

1. **Louisiana Digest—Negligence—Par. 21, 22, 25.**

Where the employees of the defendant were engaged in operating a crane in loading shells upon a gondola car, and plaintiff, not employed by defendant, was acting as trolley man of the motor car moving the gondola and had so acted for several years previously and was well acquainted with the locality and with the operation of the crane, stood upon the ground near the crane with his back turned to it, and the crane, while moving at the rate of a mile an hour, overtook him and caught his foot and mashed it; held, the danger was so obvious and so well known to plaintiff that his act in exposing himself to it and his failure to avoid it amounted to negligence barring recovery.

2. **Louisiana Digest—Negligence—Par. 2, 14.**

In the use of machinery the owner is only bound to use such precautions as are ordinarily used by men of ordinary care and prudence or by men generally engaged in the same business.

3. **Louisiana Digest—Negligence—Par. 2, 14.**

The owner is not required to furnish the newest, safest and best machinery; it is sufficient that he furnishes such as are reasonably safe and are in common use by others in the same business.

4. **Louisiana Digest—Negligence—Par. 42.**

Where the danger was manifest and understood by plaintiff, the fact that it might have been made safer by guard is immaterial.

(Civil Code, Art. 2315. Editor's note.)

Appeal from the Civil District Court, Division "D", Hon. Porter Parker, Judge.

This is a damage suit for the loss of a foot brought by a laborer who was injured while working on a construction car.

The New Orleans Public Service, Inc., intervened, praying for reimbursement of compensation paid to plaintiff.

There was judgment in favor of defendant dismissing the demands of plaintiff and intervenor.

The plaintiff alone has appealed.

Judgment affirmed.

A. B. Booth, H. W. Robinson, of New Orleans, attorneys for plaintiff, appellant.

Gordon Boswell, L. P. Bryant, of New Orleans, attorneys for defendant, appellee.

CLAIBORNE, J. This is a damage suit for the loss of a foot.

The plaintiff, who was 40 years of age, alleged that he was working as a laborer for the New Orleans Public Service, Inc., on a construction car which was receiving gravel loaded on said car by the Jahncke Service Inc. at the head of the New Basin canal at Howard avenue and Rampart street; that at about 10:40 a. m. on that date he was standing alongside of the rail on which one leg of the traveling crane of the defendant was situated with his back to the crane, signaling the motorman who was operating the flat cars of the New Orleans Public Service Inc. to back the

first car so that the second car could be loaded; that while in said position the engineer of the Jahncke Service Inc. caused said crane to be moved forward without warning so that a large cogwheel and chain which set the forward wheel of the crane in motion moved up to plaintiff from the rear and caught his trousers at the bottom and drew his foot to the track beneath the wheel, crushing his left foot; that plaintiff was taken to the Goodrich Hospital where his leg was amputated above the ankle; that he was confined to the hospital for one month, and was unable to do any work thereafter for six weeks; that the said Jahncke Service Inc. was guilty of gross negligence which caused the accident and particularly in operating a cogwheel and chain on an open highway of the city without having same covered, and setting said crane in motion without any warning to him and striking him in the rear. For the loss of his foot and for suffering plaintiff claimed $10,000.00.

The defendant admitted that plaintiff's foot had been amputated but denied the other allegations of the petition.

Further answering, they averred that their crane was of an up-to-date and approved pattern; that it was in charge of, and operated by, a skillful and careful man; that the injuries of plaintiff were not caused by any negligence or lack of skill on his part, but resulted solely from the negligence of the plaintiff, which was the proximate cause of the accident.

The New Orleans Public Service Inc. intervened praying for judgment against the plaintiff and the defendant praying for reimbursement of amount of compensation, $1389.00, paid by it to the plaintiff.

There was judgment in favor of defendant dismissing the demands of plaintiff and of intervenor.

The plaintiff alone has appealed.

The New Orleans Public Service has not appealed.

We find the facts to be as follows:

At the head of the New Basin canal near Rampart street the defendant company accumulates shells; in order to transfer these shells from the bins they operate a crane which moves along a rail about 12 feet from the bank of the canal; a cogwheel about 30 inches high is used to move the crane up and down the rail; the cogwheel itself is about three to four inches from the ground; it is propelled by a sprocket chain that goes around the cogwheel and a shaft chain worked by electricity; there is another wheel inside that runs on a rail that has a flange on each side. The New Orleans Public Service Company runs flat cars on a spur track extending from Rampart street back which are loaded with shells from the bins by this crane by means of buckets or dippers.

On the day of this accident the railway company had backed two trains consisting of a flat car and of a motor car, each one behind the other, for the purpose of receiving shells. The plaintiff in this case was the trolley man on one of the motor cars. His duty was to remain upon the end of the motor car and to hold the rope in case it happened to jump in going around a curve. The plaintiff had been in the employ of the railway company and engaged as trolley man on cars in getting shells from that particular place for two years or three and knew the location, the buckets, the crane, the track upon which it moved, the railroad tracks, the shells, and the mode of operation of all the machinery and appurtenances with which the shells were taken from the bins and loaded upon the cars. From the time the car was backed into position and the crane began to work it took seven minutes to load a car; during that time the trolley man had nothing to do and was at liberty to remain at his

post upon the rear end of the motor car, or to step down and walk upon the ground between the railroad tracks and the canal traversed by the rail upon which the crane moved up and down four and one-half feet from the canal. Upon this occasion the plaintiff left his motor car and stood upon or near the crane rail, with his back towards the crane looking towards Rampart street; no duty called him there.

The crane in motion crept towards him until it reached the heel of his left foot which it drew in and crushed. The crane moved at the utmost at the rate of 100 feet a minute, or about a mile an hour; the crane moved as the bucket dropped the shells; every time a bucket was dumped the crane moved two feet; it took seven minutes to load a car, so that in seven minutes the crane moves twenty-seven feet the length of the car; the place where the crane works is not a public place or street, and is not opened to the public; it is inclosed; the operator of the crane gave no warning when he started, but the operation of the crane is noisy. No accident has ever been caused by the crane.

We think the plaintiff brought the injury upon himself by his own negligence and want of care. The crane presented but little element of danger. But if it was dangerous it was visible. It had been in operation for five years without any accident, because it was apparent and easily avoided. It was well known to the plaintiff. He had worked on those premises for three or four years. He knew that the crane traveled upon that track up and down in distributing the shells upon the cars. He had seen the cog-wheel, and the sprocket, and the chain at work and knew where they were, and what were their functions. He came to the shell yard as trolley man upon a car for the purpose of loading it up with shells; he helped run the car next to the crane, and he knew that in the process of lifting the buckets or dippers the crane moved upon the rail as each bucket was emptied into the car. Yet he negligently placed his foot near the rail or directly upon it, and turned his back upon the crane, until it reached the heel of his foot, and the cog-wheel drew it under and crushed it; he did not heed the noise of the crane in operation.

In the case of Johnson vs. N. O. Terminal Co., 154 La. 515, 97 South. 795, the plaintiff was struck by a swinging chain dangling from a derrick. The court said:

"The danger being visible and obvious, the failure of the plaintiff to avoid it or to reasonably attempt to do so was such negligence or contributory negligence as will bar recovery." 20 R. C. L. 112; 29 Cyc. 515; 117 La. 587, 42 South. 148, Branch vs. Del Valle.

"While it is the duty of the master to keep his premises in a safe condition so as not to endanger the life of the servant, yet the servant will be denied relief against the master for injuries arising out of the unsafe condition of his premises, if with ordinary prudence the servant could have avoided the injuries." McCarthy vs. Whitney, 48 La. Ann. 978, 20 South. 171.

In Pavey v. Texas Ry. Co., 149 La. 504, 89 South. 634, the court said:

"He had every opportunity to have seen these cars moving on the main line and he was charged with the knowledge in all probability the cars would be moved as just such an operation was performed from day to day to the knowledge of the deceased who had worked there for several months."

Also Mills vs. Illinois Central R. R. Co., 148 La. 217, 221, 86 South. 750.

It was not negligence on the part of the defendant not to have protected or guarded the crane. It was plainly visible. Its condition was not suggestive of danger. It had been in use for five years without accident. The speed of the crane was at the utmost a mile an hour.

"Negligence consists in a failure to provide against the ordinary occurrences of life, and the fact that the provision made is insufficient as against an event such as may happen once in a lifetime, or perhaps twice in a century, does not make out a case of negligence upon which an action in damages will lie."

"It is not enough to prove that the accident is the natural consequence of the negligence. It must also have been the probable consequence. A mere failure to guard against a result which could not have been reasonably anticipated is not actionable negligence." New Orleans & N. E. R. Co. vs. McEwen & Murray, 49 La. Ann. 1184, 22 South. 675; C. J. 467 S. 18; Gilliam vs. T. & P. Ry. Co., 114 La. 272-1004, 38 South. 166; Givens vs. De Soto Bldg Co., 156 La. 381, 100 South. 534.

S. 3770:

"Applied to the case where a workman is injured by machinery furnished by his master, the rule of ordinary care directs the jury to consider, not whether the machinery was dangerous, but whether it was of the kind ordinarily used for similar work."

S. 3774:

"In applying this doctrine of reasonable care, it was well held that a master is not liable for injuries to his servant resulting from an accident of such a character that reasonable men, proceeding with reasonable caution, would not ordinarily have foreseen and anticipated it—such as an injury happening under very exceptional circumstances, although the proper precautionary measures, if taken, would have prevented it."

In 4 Thompson on Negligence, S. 3767, this rule is laid down:

"In the discharge of these obligations, that of maintaining safe premises where the servant is to work, that of selecting and maintaining safe machinery, tools and appliances wherewith he is to work, the obligation of the master is not absolute in the sense that he is an insurer or warrantor of results in its performance. He does not warrant the safety or sufficiency of his premises, machinery, tools and appliances * * * or the adequacy of the system which he may have devised to prevent accidents * * * but in all these and other risks the limit of his duty and obligation is the exercise of reasonable or ordinary care. Therefore, an instruction to a jury which imposes upon a railway company the duty 'to do everything that can be reasonably done' for the safety of its employees, and 'to have the structures along its line reasonably safe' is erroneous. Its duty is to use such care as a person of ordinary prudence would use in like circumstances, to furnish structures and appliances which are reasonably safe, and to use such care to maintain them in that condition." Ford vs. Tremont Lbr. Co., 123 La. 742, 49 South. 492.

S. 3768:

"He is not bound to furnish the safest and best appliances known or in use, yet he is bound to furnish such as are reasonably safe for the purposes intended."

In the use of machinery the owner is only bound to use such precautions as are ordinarily used by men of ordinary care and prudence or by men generally engaged in the same or similar business under the same or similar circumstances. 29 Cyc. 472.

A more severe rule obtains as regards the master towards his servant. Yet the law is:

"The master is not required to furnish the newest, safest and best machinery, appliances, and places for work, but his obligation is met when he furnishes such as are reasonably safe and suitable for the purpose had in view." (26 Cyc. 1107.)

"Or such as are in ordinary and common use by others in the same business." (Id. pp. 1108-11.)

It is true that T. H. Roberts, a machinist of varied experience for forty-five years, says that the cog-wheel could have been guarded by building a box around it some six feet in size. But that would have been cumbersome and of doubtful success.

He says that he never saw such a guard applied anywhere to a similar machine.

On the other hand, E. A. Hutchinson, a supervising engineer of equal opportunities, testifies for the defendant. He served his time in the shops as a machinist, as an engineer, also as a locomotive engineer for about ten years, chief marine engineer about five years, and now safety supervising engineer for the Ocean Accident Guarantee and the Columbia Casualty. He says he inspected the crane in question; he saw cranes of the same kind elsewhere; the crane is of the most up-to-date pattern in that line of machine propelled by sprockets and endless chain; it is the usual type used for that sort of work; it would not be practicable to box the machine; it would be possible to box the sprocket, but it would cause a serious trouble if it was left the way it is; the only way would be to change the propeller to a direct drive shaft, and that would require a change in the model; they have not been building those machines that way, except this style of crane with the sprockets and the chains.

In Schoultz vs. Eckardt, 112 La. 571, 36 South. 593, the court said:

"As to the third ground, nothing shows that it is negligence not to gear machines like the one in question with a counter-shaft. The testimony would go to show that machines which run continually are not usually so geared, and that the machine in question ran continually.

"Where the danger was manifest and understood by a servant using a machine, a fact that it might have been made safer by a guard is immaterial." 26 Cyc. 1134 notes.

The judgment is correct and it is therefore affirmed.