MASONITE CORPORATION *v.* GRAHAM.

(In Banc. March 25, 1946.)

[25 So. (2d) 322. No. 36084.]

Welch & Cooper, of Laurel, for appellant.

834

Jeff Collins, of Laurel, for appellee.

Roberds, J., delivered the opinion of the court.

Claude Graham obtained a judgment in the Circuit Court against the Masonite Corporation for personal

injuries allegedly resulting to him from the negligence and failure of the Corporation to furnish him a safe place in which to work as a servant of said Corporation. Since this appeal was taken, and on March 12, 1946, Claude Graham departed this life intestate and this case has been revived in the name of C. J. Graham, Administrator of his estate.

The Corporation contends on this appeal that the proof discloses no negligence on its part causing injury to Claude Graham and that its request for a directed verdict should have been granted.

The declaration charges that appellant owns and operates a plant in the City of Laurel, Mississippi, at which it manufactures masonite boards from wood products, and ". . . that one side of the said Masonite board is smooth and slick, and the other side of the board is rough, and said masonite varies in thickness from about a quarter of an inch to a half inch in thickness, said masonite board being about five feet long and about four or five feet wide, and a large amount of it is kept on hand and stacked in piles, one pile up against the other, high, in said building . . .

"That when the said masonite is stacked one rough side against the smooth side it will not slip, but when the smooth sides are stacked together it becomes very dangerous to those working on and around the said masonite. The said defendant knew, or with the exercise of ordinary care would have known, that this masonite was very dangerous when stacked two smooth sides together. That on the 17th day of March, 1945, plaintiff was working as he was required to do by the said defendant upon the top of one of these masonite stacks, taking it down and handing it to the man below to load on the buggy when he, without any knowledge on his part or any notice from anyone that the said masonite was negligently stacked with two pieces the smooth sides together, he stepped on one of the stacks in his work, as he was required to do, and the masonite slipped and threw him to the floor

. . . " and upon the stanchion or standard of the buggy, causing his injury.

The proof discloses that the Masonite boards were placed in a warehouse in stacks of verying heights; that they were removed from the warehouse by being placed in what is called a buggy or "dolly," which buggy after being loaded with boards was pulled from the warehouse by a tractor to the place where they were crated for shipment. This buggy is of suitable size for placing the boards therein. It has at each end three upright standards about four feet in length, the corner standards being iron. When the buggy is fully loaded the pile of boards is about four feet high. On the occasion in question a buggy had been placed beside a stack of boards six feet high. The buggy was partly loaded. Graham got upon the boards which were already in the buggy and then upon the six foot stack. He then proceeded to stand upon that stack and reach to the top of an adjoining stack, which was about twelve feet high, and hand down the boards from the twelve foot stack to his three helpers who were on the ground floor and who proceeded to place the boards in the buggy. Graham then proceeded to come down from the six foot stack on which he had been standing. He sat down upon the edge of this stack next to and facing the buggy, with his feet hanging down. While thus sitting he placed both hands upon the outer edge of this stack and proceeded to push himself forward, attempting to place his feet upon the boards which were in the buggy, the front end of the buggy being loaded at that time but the other half having no boards therein. In his effort to push himself forward a board, or boards, upon which he was sitting slipped and he fell forward upon one of the corner iron posts of the buggy, causing his injury, which was not very great. It is not certain from the proof just which board it was that slipped. Graham says it was the second board from the top; that when he got upon the stack he noticed that the two top boards had their slick faces together and he turned one

of them over so as to put a slick and a rough side together. Another witness says she thought the board which slipped was the top board, and yet another said it was a board farther down in the stack. Furthermore Graham was asked this question, "Could you tell by looking at a stack there whether the boards were stacked with the face sides together, or the smooth sides together?" And he answered, "Unless you would get down and look real close, I couldn't tell you whether I could or not."

The proof also shows that the usual method of getting upon and down from these stacks was to use the ladders which had been furnished by the Masonite Corporation. These ladders were of varying length suitable for use in getting onto stacks of board of different heights. It is not contended that these ladders were not suitable for the purpose. It is shown there were sufficient numbers of them to accommodate all of the workmen and Graham could have used a ladder in getting down from the stack of boards had he desired to do so. He was not commanded by any superior to get down from this stack in the manner which he adopted.

It will thus be seen that the case made out by the proof varies from the case stated in the declaration, but no point is made as to this; therefore, we will deal with the liability as made by the proof.

It is the duty of the master to exercise reasonable care and diligence to furnish the servant a reasonably safe place in which to work and reasonably suitable and safe tools and appliances with which to do his work. But he is not an insurer of the safety of the servant. Gulfport Creosoting Co. v. White, 171 Miss. 127, 157 So. 86. And for the master to be liable the injury to the servant must result either (1) from the use by the servant of an unsafe method he is forced to adopt because of command of the master or the master's total failure to furnish tools or appliances of any kind, or (2) from the use by the servant of the defective tools or appliances which are fur-

nished by the master. In this case it is undisputed that Graham of his own choosing adopted the above described method of getting down from the stack of boards when he could have used the approved ladder method of doing so. The effect of that fact is attempted to be met in this case by the assertion that had he used the ladder method and the board had slipped, he likely would have fallen anyway. The answer to that is it cannot be known whether he would have fallen and been injured had he used the approved method, and a further complete answer is that he did not use it and was not injured as a result of such use.

It follows from what we have said that Graham failed entirely to show any negligence on the part of the Masonite Corporation causing his injuries, and that the request of the Corporation for a directed verdict should have been granted.

Reversed and judgment here for appellant.