## BASTINE v. ATLANTIC COAST LINE R. CO.
### No. 14143.

United States Court of Appeals
Fifth Circuit.
June 26, 1953.

458

A. M. Crabtree, Jr., Jacksonville, Fla., for appellant.

Wm. M. Howell, Jacksonville, Fla., for appellee.

Before BORAH, RUSSELL and STRUM, Circuit Judges.

RUSSELL, Circuit Judge.

Prior to September 26, 1949, Bernard Bastiné and Robert Williams were employed by Atlantic Coast Line Railroad Company on its premises in Jacksonville, Florida. Bastine was employed in the capacity of assistant storekeeper. Williams, a laborer, had worked under his supervision for about a year. The two men were in daily contact with each other and appeared to be on friendly terms. On September 26th, Williams walked into Bastine's office and after a brief conversation he drew a pistol and shot Bastine twice, fatally wounding him, and then turned the weapon upon himself and committed suicide.

Appellant, Bastine's widow, brought this suit against the railroad company to recover damages for his wrongful death, alleging that Williams was of unsound mind and because of this was dangerous to the lives and safety of his co-employees, which condition was, or in the exercise of ordinary care should have been, known to appellee. Appellee answered denying the charge of negligence and affirmatively pleading the defenses of assumption of risk and contributory negligence.

The evidence was not in substantial dispute. Plaintiff's evidence was derived mainly from the employment record of Williams, contained in the defendant's records. It appeared that Bastine, who had been employed by appellee since about 1920, was transferred to Jacksonville in October, 1946, where he was promoted to assistant storekeeper in 1948. Williams was employed in Jacksonville in March, 1945. Before he was hired he was interviewed, given a physical examination and required to furnish three letters of recommendation. In January, 1946, upon charges that he had refused to obey the direction of a supervisor, Williams, after being granted a hearing, was recommended for dismissal.

At the hearing mention was made of the fact that he had been disrespectful to others on two occasions. Upon review, the general storekeeper was of the opinion that the evidence adduced at the hearing would not sustain such severe disciplinary action and instructed that Williams be reinstated and that time lost be considered as discipline. In March, 1947, Williams was charged with being disrespectful to the roundhouse foreman. At a subsequent hearing it was disclosed that the foreman had sent one of his men to the storeroom to get some oil, but had failed to supply him with the necessary requisition. Williams refused to honor the request for oil in the absence of a requisition. Later the foreman, accompanied by his employee, went to the storeroom to get the oil which Williams had refused to give to the employee. An argument between Williams and the foreman ensued, during which Williams cursed the foreman. When the foreman started toward Williams the latter picked up a hammer and held it until the foreman walked away. The storekeeper again recommended dismissal and Williams was dismissed. Upon petition of Williams' union representative, this action was rescinded and the disciplinary action was reduced to suspension for 90 days, at the end of which time Williams was restored to his former position. There was evidence that Williams was "beyond the average in being mild and soft-spoken." The storekeeper had never seen Williams display a violent temper or conduct himself in an abnormal or irrational manner, and had never received any complaint from Bastine concerning Williams' conduct. During a change in personnel of the defendant when Mr. Bastine was asked who he wanted in his crew, he specifically asked that Williams be so assigned. The jury returned a verdict for appellee and the judgment appealed from was entered accordingly.

Appellant contends that the judgment is erroneous and should be reversed because the court erred in overruling her motion to strike the defenses of assumption of risk and contributory negligence and in submitting these defenses to the jury over her objection. It is not contended that

the instructions were erroneous in content, but that under the facts of this case these defenses were not available to appellee. It is further contended that the verdict is contrary to law and is unsupported by any evidence. The substance of these assignments of error is that the evidence on behalf of the plaintiff required a finding that the defendant, because of its negligence in retaining Williams in its employ was legally bound to respond in damages, since there was no basis for a finding that the defenses of the defendant were valid or had been sustained.

The sufficiency of the evidence to require a judgment in favor of the plaintiff as a matter of law was not presented to the trial court except after verdict, and by motion for new trial. Consequently, no question as to the sufficiency of the evidence to support the verdict is properly before us, since federal appellate courts do not directly review jury verdicts. Clearly no such patent illegality inheres in the verdict as that the order overruling the motion for a new trial can be treated as an abuse of discretion and thus subject to correction upon appeal under the rarely enforced exception to the general rule that the propriety of orders denying or granting a new trial will not be reviewed by appellate courts. Indeed, our consideration of the evidence provokes the thought that it is the plaintiff's case that may be without sufficient evidentiary support, and raises some doubt whether any verdict other than the one returned by the jury would have been authorized. However, since the defendant has not appealed from the order of the court overruling its motions for an instructed verdict, and we find no merit in the plaintiff's claims of error, we do not rule upon the sufficiency of the plaintiff's evidence to support a recovery.

Under the circumstances of this case the defenses of assumed risk and contributory negligence were available to the defendant. The suit was a common law action for negligence of the employer in retaining in its employment the plaintiff's deceased husband's fellow employee, Williams, with knowledge that he was of unsound mind which rendered him dangerous to the lives and safety of his co-employees. However, the deceased Bastine had a much closer relation and contact with Williams than as a fellow employee in general. He was the assistant storekeeper having supervision and control of a crew of men including Williams, who worked immediately under him, and, in fact, during a change in personnel of the defendant, when Mr. Bastine was asked who he wanted in his crew, he specifically asked that Williams be so assigned. There was undisputed evidence that he had never made any complaint to his superiors of any mental aberrations or deficiency on Williams' part. The circumstances present a valid basis in fact for the inference that if Williams was of such disposition and tendency as claimed by the plaintiff Bastine knew, or in the exercise of ordinary care should have known, of such tendency and disposition. Also, whether if Bastine had such knowledge, he, in the exercise of ordinary care, should have reported it to his superiors. If the jury thereupon found knowledge or obligation to report as a fact, the applicable Florida law would exonerate the defendant from liability just as the court instructed the jury.

The Florida courts, like American jurisprudence generally, recognize and enforce the rule that an employer has an affirmative and continuing duty to exercise ordinary care in providing his employees with a reasonably safe place within which to work, reasonably safe machinery, tools and implements to work with, and with suitable and competent fellow servants to work with him [1]. The employer, however, is not an insurer of the safety of his employees [2]. When the employer has fully

1. McGee v. C. Ed DeBrauwere & Co., 117 Fla. 859, 162 So. 510; Wilson & Toomer Fertilizer Co. v. Lee, 90 Fla. 632, 106 So. 462; Callahan v. Bryce, Fla., 47 So.2d 517; German-American Lumber Co. v. Brock, 55 Fla. 577, 46 So. 740, 743.

2. Seaboard Air Line R. Co. v. Gentry, Fla., 46 So.2d 485; Tankersley v. Southern Ry. Co., 73 Ga.App. 88, 35 S.E.2d 522; Masonite Corp. v. Graham, 199 Miss. 833, 25 So.2d 322; Ford v. Tremont Lbr. Co., 123 La. 742, 49 So. 492,

performed his duty, the employee "assumes all the ordinary and usual risks and perils incident to the employment, and all risks that the servant knows, or by the exercise of reasonable care and attention should know, to be incident to the employment." German-American Lbr. Co. v. Brock, supra, [55 Fla. 577, 46 So. 741]; Gordon v. Gandy Bridge Co., 150 Fla. 28, 7 So.2d 350. However, it is generally stated that an employee will not be held to have assumed risks resulting from his employer's negligence[3], and has a right to presume that his employer has exercised ordinary care in fulfilling his duties[4]. Appellant relies upon this principle in contending that it was error to permit appellee to avail itself of the defense of assumption of risk. However, this broad statement of the rule is applied in circumstances where the legal effect of the knowledge of the employee of the existing negligence of the employer is not involved. In cases where the evidence affords a basis for a finding that the employee had knowledge of the employer's negligence and nevertheless continued in the employment, the Florida decisions state that the general rule that the employee will not be held to have assumed risks resulting from the employer's negligence is subject to qualification and restriction so that if the injured employee had knowledge of the situation and continued in the employment without objection or protest and without any promise by the employer of correction, he is not entitled to recover for injury resulting from such appreciated negligence of the employer. Thus, in South Florida R. Co. v. Weese, 32 Fla. 212, 13 So. 436, 443, the court held that while the rule that a servant does not assume the risk of his employer's negligence is clearly established;

"* * * it is also well settled that it is a complete answer to the claim for damages resulting from a failure to furnish suitable instrumentalities and a safe place to work that the injured servant had full knowledge of the situation, and engaged in the employment, or continued therein, without objection or protest, and without any promise or assurance on the part of the employer to provide better."

To like effect is the holding in Taylor v. Prairie Pebble Phosphate Co., 61 Fla. 455, 54 So. 904, in which the court held that where injury results to an employee from the breach of his employer's duty to furnish him competent fellow servants to work with, the injured employee may recover damages from such injury, unless he knew, or should have known, of the employer's negligence and assumed the risk accruing therefrom. In Wilson & Toomer Fertilizer Co. v. Lee, supra, [90 Fla. 632, 106 So. 466], the court stated:

"It is true that a servant who continues without objection in his master's employ with knowledge of a defective apparatus assumes the hazard incident thereto, but, unless the evidence clearly shows the assumption of the risk, it is a matter properly left to the determination of the jury."

As we have stated, the evidence showed that Bastine supervised Williams' work and was in daily contact with him for about a year immediately preceding the tragic occurrence in question, and thus authorized a finding by the jury that he knew, or should have known, of any dangerous propensities of Williams. If he did have such knowledge, the jury could well conclude that he assumed the risk of injury caused by Williams' mental condition. The questions were proper for determination of the jury under the instructions of the court. Tampa Shipbuilding and Engineering Co. v. Thomas, supra. For the reasons just stated, and in view of Bas-

---

22 L.R.A.,N.S., 917; Tallassee Falls Mfg. Co. v. Taunton, 16 Ala.App. 572, 80 So. 152; 35 Am.Jur. 549, Master & Servant, § 121.

3. German-American Lbr. Co. v. Brock, supra; Logan Coal & Supply Co. v. Hasty, 68 Fla. 539, 67 So. 72; Smith v. Coleman, 100 Fla. 1707, 132 So. 198; Swanson v. Miami Home Milk Producers' Ass'n, 117 Fla. 110, 157 So. 415.

4. Wilson & Toomer Fertilizer Co. v. Lee, supra; Tampa Shipbuilding & Engineering Co. v. Thomas, 131 Fla. 650, 179 So. 705; 35 Am.Jur. 686, Master & Servant, § 258.

tine's position, it was likewise a question for the jury whether, in the exercise of ordinary care for his own safety, Bastine should have made complaint to his superiors of any dangerous tendencies of Williams, and whether his failure to do so, under the circumstances, rendered him contributorily negligent.

No exception was taken to the re-charge of the jury at the time it was given and when the court would have had an opportunity to correct any claimed inaccuracies in his instructions.

No ground for reversal appears. Accordingly, the judgment of the trial court is affirmed.

Judgment affirmed.