MARION E. SUTTON, MALCOLM M. SUTTON, and JOHN WILLIAMS, Co-partners, doing business as SUTTON BROTHERS, *Plaintiffs in Error*, vs. GLENWOOD HANCOCK, a Minor by his next friend, B. F. MINTON, *Defendant in Error.*

141 So. 532.

Division A.

Opinion filed May 11, 1932.

Petition for rehearing denied May 31, 1932.

498

*Marks, Marks, Holt, Gray & Yates,* for Plaintiffs in Error;

*D. E. Knight* and *H. V. Knight,* for Defendant in Error.

TERRELL, J.—Defendant in error, Glenwood Hancock, a young man of eighteen or nineteen years of age, recovered a verdict and judgment against plaintiffs in error in the sum of fifteen thousand dollars for personal injuries. This writ of error is to review that judgment.

Plaintiffs in error rely on the fellow servant doctrine, variation in the proof from the allegation of the declaration, and improper remarks of plaintiffs' counsel in his address to the jury, as grounds for reversal.

As to the latter it is sufficient to say that the remarks of plaintiffs' counsel in his argument to the jury to the effect that he was not advised whether the expenses of Mr. Simpkins (a witness for defendant) were to be paid by defendants or by the insurance company, were out of place and improper but they were promptly challenged and in

view of the instructions given by the court to disregard them we think they were harmless.

As to the contention that the proof is fatally variant from the allegations of the declaration we have read the record carefully and we fail to find such support for this contention as would warrant reversal.

This brings us to a consideration of the contention of plaintiffs in error bottomed on the fellow servant doctrine. In this connection the record discloses that at the time defendant in error was injured he was working on an overpass being constructed by the plaintiffs in error near Hawthorne, Florida. He was a day laborer earning two dollars and twenty-five cents per day and was working on a scaffold eighteen or twenty feet about the ground. He had never worked on the scaffold before, had nothing to do with its construction, and knew nothing about the manner of its construction. The work was in charge of a superintendent named Rich who had complete control of the job and had authority to hire and discharge men at will. Rich had all the authority of a vice-principal and the scaffold was constructed under his direction. It was constructed in an insecure manner and immediately prior to its falling as a result of which defendant in error was injured a colaborer named Theus attempted to secure it but was intercepted by Rich, the superintendent, and ordered back on it in a manner evincing a total indifference to human life and safety. The scaffold fell from the weight of a timber dropped on it from three or four feet above. The timber was 7"x9" by sixteen to twenty feet long. Two other laborers were working on the scaffold with defendant in error at the time it fell, defendant in error fell to the ground with the collapsed scaffold, the timber which caused it to fall, fell on him, he was rendered unconscious for a time, one pelvic bone was fractured twice, rendering that leg permanently a little shorter than the other, and there was

evidence of injury to the spine, all of which rendered him permanently incompetent to make a living by manual labor but not incompetent to do so at some other employments.

Plaintiffs in error contend that under this statement of facts the negligent act complained of was a mere detail of the work in which the master owed no duty to warn defendant in error and failure to do so was the negligence of a fellow servant for which the master is not liable. They rest this contention on the following cases: McLaine vs. Head & Dowst Co. 71 N. H. 294, 52 Atl. 545, 58 L. R. A. 462, 93 Am. St. Rep. 522; Maine & N. H. Granite Corp. vs. Hachey 97 C. C. A. 508, 173 Fed. 784; Hussey vs. Coger 112 N. Y. 614, 20 N. E. 556, 3 L. R. A. 559, 8 Am. St. Rep. 787.

These cases have all been read and they exemplify a much higher degree of care in providing a safe place to work, safe instrumentalities to work with, and a competent vice principal to direct the work than is shown by the facts in the instant case. They are not, therefore, controlling as to the case at bar.

The rule is academic and too well settled to require citation of authorities to support it that when a master uses reasonable care in the selection of a competent vice principal and co-laborers and exercises reasonable precaution to furnish them a safe place to work and proper instrumentalities to work with he is under no duty to warn said servants or co-laborers of transitory dangers arising out of the performance of mere details of the work caused by the acts of fellow servants.

Who is a fellow servant is a question of law growing out of the facts of the particular case. The decided weight of authority is to the effect that all who serve the same master, work under the same control, derive authority and compensation from the same common source, and are engaged in the same general business, though it may be in different

grades or departments of it, are fellow servants, who take the risk of each others negligence. Black's Law Dictionary and cases cited.

In McLaine vs. Head & Dowst Co., supra, it was held that when one person suffers injury through the negligence of another in the same service, the question whether they are fellow servants within the rule exempting the master from responsibility is not determined by the fact that they were engaged in a common employment under the same general control and paid by the same principal, but depends upon whether the negligent servant, in the act or omission complained of, represented the master in the performance of any duty owed by the latter to the person injured. In other words the responsibility of the master "is determined by the nature of the act in question, and not by a difference in rank or grade of service between particular servants."

Defendant in error and Rich, the superintendent, were engaged in a common employment. If they had been furnished sound material to construct the scaffold and had constructed it in such a manner that it fell and injured one or both of them in the course of their common employment without any fault on the part of the master they could maintain no action for recovery against the master. It is the duty of the servant to take all reasonable precaution to guard his own safety and the duty of the master would end with furnishing the material.

But we are not confronted with that situation here. In this case Rich represented the master. The scaffold was constructed under his direction, the defendant in error had nothing to do with its construction, and was not advised as to whether it was a safe instrumentality. The evidence indicates that Rich knew it was not safely constructed but if he did not know this we was warned of its unsafe condition immediately preceding the accident and it was his duty to see that it was secured instead of inter-

cepting and preventing a fellow servant from doing this.

Defendant in error was young and inexperienced, an ordinary helper who had worked on the scaffold before but who had a right to assume that it was safe. Its unsafe construction and negligence of vice principal in securing it when warned of its bad condition was the proximate cause of the injury, for which the master was responsible.

The judgment below is accordingly affirmed.

Affirmed.

WHITFIELD, AND DAVIS, J.J., concur.

BUFORD, C.J., AND ELLIS AND BROWN, J.J., concur in the opinion and judgment.