STANDARD ACCIDENT INSURANCE COMPANY, GARNISHEE, v. GLENWOOD HANCOCK.

169 So. 617.
Division A.
Opinion Filed June 30, 1936.
Rehearing Denied September 8, 1936.

*Marks, Marks, Holt, Gray & Yates, Harry T. Gray* and *C. C. Adkins,* for Plaintiff in Error;

*Knight & Knight,* for Defendant in Error.

PER CURIAM.—Glenwood Hancock recovered a judgment against Marion E. and Malcolm M. Sutton and John W. Williams, as partners doing business under the firm name of Sutton Brothers, for $15,000.00, in an action at law for personal injuries in the Circuit Court for Alachua County, which judgment was affirmed by this Court in May, 1932. See Sutton, *et al.,* v. Hancock, 105 Fla. 497, 141 So. 532. This suit was defended by Standard Accident Insurance Company, a corporation, plaintiff in error here, which company had issued a liability insurance policy to the defendant in that case for $5000, covering also costs of the court, and interest from date of judgment. An execution having been issued on the judgment from which only $275.50 was received, Hancock, by his attorneys, on November 7, 1932, commenced garnishment proceedings against the Standard Accident Insurance Company, alleging in the affidavit that said Company had in its possession or control, goods, monies, chattels or effects belonging to said judgment-defendants. The said Insurance Company filed its answer to the writ of garnishment in which it is alleged that it was not indebted to said defendants, or any of them, at the time the writ was issued or at the time of filing the answer; nor did it have in its possession or control any property of the said defendants whatsoever; that on the contrary, said partners doing business as Sutton Brothers are and were at all said times indebted to said Insurance Company. Plaintiff Hancock filed a traverse of this answer. A trial was had upon the issues thus raised on November 29, 1933, which trial resulted in a verdict in favor

of the plaintiff, defendant in error herein, in the sum of $8,000.00, upon which judgment was duly rendered. This judgment is now before us for review on writ of error.

Upon the trial the plaintiff below introduced evidence tending to show that the garnishee was indebted to Sutton Brothers in the sum of $5,000.00, costs of court and interest from date of the judgment which had been obtained by Hancock against Sutton Brothers by reason of a certain liability insurance policy given by the Garnishee to insure Sutton Brothers against legal liability for such accidents as that out of which the plaintiff's injuries arose, suit to recover which was defended by said garnishee, as it had a right to do by the terms of its policy, and which liability under the policy had not been discharged by the Garnishee at the time the garnishment proceedings were instituted.

The garnishee contended that if any liability existed under said policy which could be reached by garnishment, it had discharged this liability by crediting the amount due thereunder upon the indebtedness due from Sutton Brothers to the garnishee, sustained by reason of the garnishee having been surety for Sutton Brothers upon a bond given in connection with the construction of the Men's Dormitory at Gainesville, Florida, by reason of which garnishee sustained a net loss of some $30,000.00.

The plaintiff introduced testimony tending to show that while said suit by Glenwood Hancock against Sutton Brothers was pending it was anticipated by Sutton Brothers and by the garnishee that plaintiff would recover a substantial judgment. That said defendants also had other creditors, and the garnishee advised defendants to give garnishee a mortgage covering all their assets, consisting largely of construction equipment and worth about $50,000.00, which mortgage, upon the advice of garnishee, was given

for approximately $8000.00 more than the anticipated actual indebtedness due or to become due by Sutton Brothers to the garnishee; that this was done to hinder, delay and prevent the collection of plaintiff's anticipated judgment and the claims of other creditors, and to enable the garnishee to probably settle plaintiff's uncollectible judgment for less than garnishee's liability upon the policy, and to enable garnishee to keep possession of the property while completing other projects of work. That the garnishee also advised defendants to form a family corporation to retain possession outside of this State of the personal property, with the understanding that garnishee would not enforce its mortgage against Sutton Brothers for more than the actual claim; that this transaction was consummated about twenty-two days before the trial of the main case. That while the case was pending in the Supreme Court the garnishee gave defendants notice accelerating the whole mortgage debt and declaring same due because of partial default and shortly thereafter sold in South Carolina some $35,000.00 worth of equipment under the mortgage; that after the Supreme Court had rendered its judgment of affirmance, but before the mandate had gone down, the garnishee, without first obtaining the consent of defendants, purported to credit the mortgage debt with the payment of $5000.00 as of June 1, 1932, such credit being the principal amount of liability insurance, without cost of court ($45.55) or accrued interest ($930.17). That on the same day garnishee advised defendants that they had credited them with said amount and that this ended the contract of the Insurance Company with the matter, and that "any action taken from then on to prevent the collection of the judgment should be taken by the defendants individually." The testimony to sustain the foregoing consisted almost entirely of

the testimony of M. E. Sutton, member of the partnership. It must be admitted that the testimony of this witness was somewhat vague and equivocal at times. Thus, in one place he testified that they gave the mortgage to the garnishee "to keep their equipment from being tied up." But on the whole this testimony tended to support the plaintiff's contention.

The garnishee introduced evidence showing that as surety upon Sutton Brother's bond in connection with the Men's Dormitory at Gainesville, it sustained a loss of $65,553.21 for claims and $3,467.36 for expenses, a total of $69,040.77. That it received no credits from any source except the items shown on the credit side of the account amounting to $44,521.61, which included $3000.00 in cash paid by Sutton Brothers and the $5000.00 credited on account of the insurance policy, leaving a net loss of $24,513.16. Adding to this the $5000.00 credited on account of the liability policy, and the $3000.00 on account of cash paid by Sutton Brothers, or $8000.00, that there was a net loss as of October 24, 1930, when the $3000.00 was paid, of $32,513.16. The mortgage was for $36,500.00, dated October 22, 1929, and was acknowledged and executed December 24, 1929, and was filed for record in Tennessee, where the equipment was located, on January 23, 1930. The garnishee also offered in evidence a letter from a firm of lawyers in Nashville, Tennessee, who represented the Standard Accident Insurance Company, addressed to Sutton Brothers, dated December 20, 1929, in which they said that they were in receipt of a letter from the Insurance ompany, dated December 17, 1929, in which it was stated: "We intend to take nothing more by virtue of this chattel mortgage than actual loss and expenses which we have sustained which is covered by Sutton Brothers application for this bond." "This," contin-

ued the attorney's letter, "of course simply means that if the amount of the notes is greater than the loss and expenses incurred, the Standard will give you credit on the notes for same."

The insurance policy issued by the garnishee to the defendant contained the following provision:

" 'To indemnify the named assured (Sutton Brothers) * * * against loss from the liability imposed by law upon him for damages on account of bodily injuries * * * accidentally sustained by reason of the prosecution of the work, and at the places described * * * by any employee or employees of the assured * * *'  The policy was subject to certain conditions limiting the total liability to Five Thousand Dollars and to a certain other condition that:

" 'G.  No action shall lie against the company to recover for any loss under this policy, unless it shall be brought by the assured for loss actually sustained and paid in money by him after actual trial of the issue, nor unless such action is brought within ninety days after the payment of such loss.' "

The court denied the garnishee's motion for a directed verdict and submitted the case to the jury.  At the request of the plaintiff, the court gave the following instruction to the jury:

" 'If you find from the evidence in this case that the garnishee, in taking any mortgage over the defendant's property, had for its purpose a fraudulent intent to delay, hinder or defraud the plaintiff in the collection of his claim against defendants, then such mortgage when taken with such fraudulent purpose is void and of no effect against the plaintiff.' "

The first prime question involved as posited by plaintiff in error's brief is as follows:

"When a liability insurance policy provides that no suit against the insurer may be brought until the insured has actually sustained and paid in money the loss covered by the policy, is the liability of the insurer under the policy subject to garnishment by a creditor of the insured?"

To this might be added, to make the meaning clearer, as applied to the facts of this case: "before the insured had actually sustained and paid in money the loss secured by the policy, but where the amount of the liability of the insurer to the insured had been established in an action at law brought by an injured employee against the insured, which action was defended by the insurer-garnishee, and the garnishment is sued out under such judgment by the judgment-plaintiff?"

The contention of plaintiff in error is that the liability under the policy had not become due or subject to garnishment because under the terms of the policy Sutton Brothers had not paid in cash the judgment that arose from the injuries sustained by Glenwood Hancock. That such injuries were covered by the policy of insurance is not denied.

This question is no longer an open one in this state. While recognizing the conflict of authority in other jurisdictions, this court in the case of Elliot v. Belt Automobile Association, 87 Fla. 545, 100 So. 797, held that a provision in a policy that no action shall lie against the company unless it shall be brought by the assured for loss or expenses actually sustained and paid in money by him after trial of the issue, applies, only in case the company denies liability and refuses to defend. See also Patterson v. Adan, and Philadelphia Casualty Company, 119 Minn. 308, 138 N. W. 281, 48 L. R. A. N. S. 184, and note; also annotations in 37 A. L. R. 637 and 644; which indicate that Florida has taken its position with the minority on this question. But

the tide seems to be turning in favor of the minority. See Elliott v. Aetna Life Insurance Company, 161 N. W. 579, L. R. A. 1917C 1061; Blanton v. Kansas City Cotton Mills Co., 103 Kan. 118-L. R. A. 1918E 541, 172 Pac. 987; Brandon v. St. Paul Mercury Indemnity Co., 132 Kan. 68, 294 Pac. 881; 83 A. L. R. 673, and note commencing at page 677.

We will not attempt to review or analyze the numerous decisions of the courts on this question. Suffice it to say that this court is committed to the minority view by its decision above referred to, and we adhere to the opinion of Mr. Justice BROWNE, in that case wherein it was said: "* * * we find that clauses similar to these, have received consideration in other jurisdictions, and there is conflict in the authorities. Some that seem to us to be founded on the soundest reasoning, hold that where the defendant insurance association undertakes to defend the action and does so, its liability to pay any valid judgment obtained against the insured is established, and if it fails or refuses to pay the judgment, the insured may recover in an action on the policy. * * *

"This court must take its stand with one line of authorities or the other, and we prefer to adopt the doctrine that we think best conforms to the intent of the parties and promotes justice, affords the greatest protection to the insured, and deprives the insurance company of no legitimate protection."

Plaintiff in error contends that the liability under the policy due to Sutton Brothers had been paid by crediting the amount of this liability to their account. Defendant in error contends that this credit was made without the knowledge or consent of Sutton Brothers and amounted to a credit of a portion of the liability under the policy against

a mortgage given and received in fraud of the insured creditors; that the liability under the policy was $5000.00, plus costs of court and interest on the judgment, a total of $5975.72, whereas the garnishee credited only $5000.00. The witness Sutton had testified that his firm did not consent to the application of the insurance monies as a credit, and there is evidence tending to show that this credit was made to the mortgage debt. Defendant in error contends therefore that the purported credit must stand or fall with the validity or invalidity of the mortgage as regards Glenwood Hancock and other creditors.

Plaintiff in error contends that the court erred in refusing to give the following charges requested by the garnishee:

"1. A garnishee is not by the service of the writ to be placed in any worse condition than if the defendant, his creditor, had brought suit upon the claim which is garnisheed. As to the garnishee, the plaintiffs take the shoes of the defendant, and can assert only the rights of the latter. The rule is, that while the garnishee may not, after the service of the writ, by his own action acquire set-offs or counter claims against the principal debtor to the prejudice of the garnishing creditor, he may properly avail himself of all claims fairly arising out of contract with the principal debtor which were in existence when the garnishment commenced, and under or out of which his claim against the principal debtor arises

"2. A garnishee is not by the service of the writ to be placed in any worse condition than if the defendant, his creditor, had brought the action upon the claim which is garnisheed. As to the garnishee, the plaintiff takes the shoes of the defendant, and can assert only the rights of the latter. Any defense which the garnishee could have

interposed to defeat a recovery against him if the proceeding has been one directed against him by the defendant for the enforcement of the indebtedness of the garnishee to the defendant may be interposed by the garnishee to prevent the recovery of a judgment against him as garnishee."

In 12 R. C. L., at pages 778-779, it is said:

"The right of the creditor against the garnishee cannot, by garnishment, rise higher than the right of the debtor against the garnishee. If the right of the debtor is subject to a right of the garnishee, the right of the creditor is subject to the same right. Accordingly a usual, but not necessarily decisive test, to determine whether or not one is liable as garnishee is, whether the principal debtor has a right of action against the garnishee. One who has directed his agent to make a donation to the debtor cannot be garnished, for the debtor cannot enforce payment. However, there is one exception to the rule that the garnishing creditor can avail himself only of the legal rights of his debtor against the garnishee. When the garnishee has possession of property of the debtor under a fraudulent transfer, though such transfer is valid against the debtor, the creditor may assert its invalidity and in many instances reach the same by garnishment."

In the comparatively recent case of Coosa Land Co. v. Stradford, 224 Ala. 511, 140 So. 582, it was said:

"The general rule is that an indebtedness from garnishee to judgment debtor subject to garnishment means such an indebtedness as will sustain an action of assumpsit by the judgment debtor.

"This rule, however, is subject to an exception. Where, by fraud and collusion between judgment debtor and garnishee, the debtor's funds or choses in action are transferred to the garnishee, to be held for the benefit of the

transferor, with the intent to defraud his creditors, garnishment will lie, notwithstanding the judgment debtor, by reason of his own fraud, may not be able to sue the transferee in assumpsit. Nicrosi v. Irvine, 102 Ala. 648, 15 So. 429, 48 Am. St. Rep. 92."

Applying the principle thus stated by the Supreme Court of Alabama to the evidence in this case, the trial Judge was free from error in refusing to give said requested charges.

It is true, plaintiff in error contends that at the time when the mortgage was given, the exact amount that was due the mortgagee could not be determined and that the facts in evidence show that it was the intention of the parties merely to secure to the mortgagee the true amount of his indebtedness and no more. This may have been true as a matter of fact, but the jury had before them the testimony of Sutton to the effect that the mortgage was knowingly given and received by the mortgagee for $7000.00 or $8000.00 more than the amount of the mortgagor's indebtedness, and there are other portions of his testimony that indicate that this was done upon the advice of the company's attorney to hinder or delay the collection of Hancock's probable judgment, the mortgage having been secured just a few days before the then pending suit ripened into a judgment in favor of Hancock. In the face of this conflicting evidence, the trial court cannot be held in error for submitting the question to the jury, nor for refusing the motion for a new trial, so far as this question is concerned. See Baldwin v. LaFayette Land Co., 62 Fla. 129, 56 So. 945; Craig v. Gamble, 5 Fla. 430; Jackson v. Citizens Bank, 53 Fla. 265, 44 So. 516; Vickers v. Glenn, 102 Fla. 535, 136 So. 326; 2 R. C. L. 509-510, 580-584; Union Securities Co. v. Smith (Wash.) 160 Pac. 304, Ann. Cas. 1918E, 710, and note.

Plaintiff in error contends that the court below should

have granted its motion for new trial on another ground set up in the motion to the effect that the garnishee in the court below was taken by surprise by the testimony of Mr. Sutton as to statements alleged to have been made by the Insurance Company's representative in Tennessee, advising Sutton with reference to the mortgage, and upon which defendant in error relies to show that the mortgage was fraudulent; that garnishee had been informed by the representative of the Insurance Company referred to by Sutton that he did not advise Sutton Brothers to execute the chattel mortgage to the garnishee to defeat the claim of Hancock or any other claim, and that he did not advise Sutton Brothers to make the mortgage in excess of the amount owed to the Insurance Company for the purpose of hindering or defeating Hancock's claim or judgment; that the amount of indebtedness evidenced by the notes and mortgage was determined upon as approximately the amount then thought to be due to the Insurance Company by Sutton Brothers and that it was expressly understood and agreed that the mortgage should only secure the actual loss sustained by the Insurance Company on account of Sutton Brothers and for which they were legally liable; that he was not a party to any plan or scheme for the purpose of permitting Sutton Brothers to hinder, delay or defeat the Hancock claim or judgment or any other claim or judgment, and that upon another trial of the case the testimony of said representative of the Company would be produced by the garnishee.

While this was a rather strong showing for a new trial, we cannot, in the light of our previous decisions as to the discretion of the trial court, hold that the court below was clearly in error in overruling this motion. Fla. &c. R. Co.

v. Knowles, 68 Fla. 400, 67 So. 122; Holman v. Klutho, 91 Fla. 853; 109 So. 314; 10 Encyc. Dig. Fla. Rep. 228, 252.

However, the verdict was excessive. Computing the amount due under the policy from the date of the first verdict, January 17, 1930, to November 30, 1932, the date of the verdict in garnishment, three years, ten months and thirteen days, interest at the rate of eight per cent would amount to approximately $1546.89, which added to the $5000.00 amounts to $6546.89, and adding to this the court costs taxed at $45.65, the verdict should not have been for more than $6592.54.

If the defendant in error will enter a remittitur of all of said verdict and judgment in excess of the amount just above named within thirty days after the going down of the mandate in the case, the judgment of the court below, after entering such remittitur, will stand affirmed, otherwise the judgment will be reversed and the cause remanded for a new trial.

The judgment of the court below as so modified to correspond with said remittitur will stand affirmed.

Affirmed, conditioned upon remittitur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur.

ELLIS, P. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.