TAMPA SHIPBUILDING & ENGINEERING COMPANY v. CLARENCE H. THOMAS.

179 So. 705.

Division A.

Opinion Filed March 4, 1938.

652

654

[redacted]

*McKay, Macfarlane, Jackson & Ramsey,* for Plaintiff in Error;

*Whitaker Brothers,* for Defendant in Error.

BUFORD, J.—This writ of error is to review a final judgment, awarding plaintiff $4500.00 damages, in an action for personal injuries.

Clarence H. Thomas filed his declaration, consisting of a first count and an amended second count, against the Tampa Shipbuilding & Engineering Co. Both counts alleged matters of inducement in the same language. Both counts alleged that plaintiff was 39 years of age at the time of the accident, was a carpenter by trade, earning from $6.00 to $7.50 per day; that on December 12, 1934, plaintiff, as an employee of defendant and as a carpenter, was placed in the supervision and control of Virgil Bass, the foreman or layout man, in charge of shipbuilding carpenters engaged in constructing pontoon number 1, and clothed with authority to give all orders and directions to said employees regarding the work; that on said date Virgil Bass ordered the plaintiff to ascend a scaffold erected by defendant around the side of the pontoon, which scaffold was ap-

proximately 20 feet high, and bore holes in the side of the pontoon, for the purpose of inserting drift bolts, with an air drill or hammer, weighing approximately 50 pounds, into which was inserted a bit or augur 30-32 inches in length, said drill or hammer being propelled by compressed air.

The gist of the first count is that the defendant was negligent in failing to furnish the plaintiff a safe place in which to work. The first count contains the following allegations:

"Plaintiff further shows that he was inexperienced in the use and operation of said Hammer or Air Drill, all of which was known to the said Bass as Foreman of the carpenters at work on said Pontoon and that no instructions as to the use of said Hammer or Air Drill or dangers attendant upon the use of said instrument was given plaintiff by the said Bass or any person in the employ of said defendant; that in obedience to said orders so given plaintiff ascended said scaffold or platform and undertook the performance of the work assigned to him by the said Bass as Foreman or Lay Out man, and in so doing it became the legal duty of said defendant to provide plaintiff with a reasonably safe place to work and to have the platform or scaffold free and clear of all obstructions in order to protect plaintiff and others engaged in similar work from harm and danger while engaged in the discharge of the duties incident to such employment, but defendant, in disregard of its legal duty to plaintiff carelessly and negligently permitted and allowed one of the beams or poles supporting said scaffold or platform to extend or project some twenty-four or thirty inches above the level of said platform where plaintiff was engaged in the performance of his duties, which was known or should have been known to defendant by the exercise of ordinary care and diligence.

"Plaintiff further shows that on account of the weight of said Hammer or Air Drill used in propelling said bit or

augur in boring or drilling said holes in the side of said Pontoon it became necessary that plaintiff be furnished with what is known as a helper, all of which was done by said defendant, and in drilling said described holes in the side of said Pontoon it became necessary to reverse the air current propelling said Hammer and Bit or Augur in order to withdraw said bit or augur from the holes bored in the side of said Pontoon, and while withdrawing said bit or augur, there being a double handle to said Hammer or Air Drill, plaintiff holding one handle and his helper the other, and while withdrawing said bit or augur from the hole so bored in the side of said Pontoon the arm of plaintiff's helper came in contact with said upright beam or pole projecting above said platform or scaffold as above set out and described, which was the proximate cause of the injury hereinafter set out and described, with such force and violence that the hand of said helper was disengaged or knocked loose from the handle of said Hammer or Air Drill thereby causing said Hammer or Air Drill to fall with great force and violnece and the bit or auger attached thereto came in contact with ankle of plaintiff's right foot and passing entirely through plaintiff's ankle and foot * * *"

The gist of the second count as amended is that the defendant was negligent in failing to provide plaintiff with reasonably safe tools with which to do the work required of him. The second count as amended contains the following allegations:

"Plaintiff further shows that he was inexperienced in the use and operation of said Hammer or Air Drill and with the size, length, and kind of bit or augur customarily used in boring or drilling said holes in the side of said Pontoon for the reception of said drift bolts or pins, all of which was known to the said Bass, the then Foreman or Lay Out man in charge of the carpenters at work on said

Pontoon and that no precautionary instructions as to the use of and dangers incident to the use and operation of said tools and machinery was given plaintiff by said Bass or any other person, agent or representative of said defendant in the discharge of the duties imposed upon and assigned to him by the said Bass as Foreman or Lay Out man; that in obedience to the orders so given as hereinbefore set out and alleged plaintiff ascended said scaffold or platform and undertook the performance of the duties assigned to him by the said Bass, and in so doing it became and was the legal duty of said defendant to furnish plaintiff with suitable and reasonably safe tools and appliances with which to do said work in order to protect plaintiff from harm and danger while engaged in the performance of said work so assigned to him, but defendant in total disregard of the duties due plaintiff to furnish him with suitable and safe tools and appliances with which to do said work carelessly and negligently furnished plaintiff with a bit or auger thirty or thirty-two inches in length to be inserted in said Air Drill or Hammer which was driven or propelled by compressed air, which bit was not suitable for such use and which was not customarily used by said defendant in said work, the same being twice the length of the customary bit or augur customarily used by said defendant in drilling or boring such holes in the side of said Pontoon; that in addition to said bit or augur being too long for the use for which it was intended, that said bit or augur had been previously bent, but plaintiff alleges the facts to be that said bit or augur had the appearance of being suitable for the use intended, and was advised by said Bass, the Foreman or Lay Out man in charge of the carpenters and the work in progress, advised plaintiff that he had personally straightened said bit or augur, that the same was in first class condition and suitable for the use and purpose to

which it was to be employed all of which statements plaintiff relied upon he having the legal right so to do, took said bit or augur and inserted the same in the said Hammer or Air Drill and proceeded to do the work so assigned to him by the said Bass; that defendant knew or could have known in the exercise of ordinary care and diligence, that said bit or augur was not customarily used in drilling or boring said holes in said Pontoon, the same being twice the length of the bit or augur customarily used in said work, and was not suitable for the use to which the same was to be and was employed; that said bit or augur had been bent and not being suitable for such work to which it was to be employed and was employed, the same being weakened by being previously bent and not properly straightened, all of which was known to defendant or could have been known to defendant by the exercise of ordinary care and diligence; plaintiff further shows that said tools and appliances so furnished by defendant to do said work as aforesaid, said bit or augur being twice the length of those customarily used in doing such work and having been bent. as aforesaid rendered the same a dangerous instrumentality when attached to said Air Drill or Hammer, all of which acts of negligence on the part of the defendant were the direct and proximate cause of the injuries to plaintiff as hereinafter described and set out.

"Plaintiff further shows that on account of the weight of said Hammer or Air Drill used in operating or propelling said bit or augur in boring or drilling holes in the side of said Pontoon it became necessary that plaintiff be furnished with a helper, all of which was done by the defendant, and in drilling, said holes in the side of said Pontoon it became necessary to reverse the air current in order to withdraw said bit or augur from holes bored in said Pon-

659

toon and while withdrawing said bit or augur, there being a double handle to said Hammer or Air Drill, plaintiff holding one handle and said helper the other, and while withdrawing said bit or augur from one of the holes so bored in said Pontoon, by reason of the defectiveness of and the length of said bit or augur as hereinbefore set out and described began to wabble thereby causing said Drill, or Hammer to shimmy, quiver and shake, and in withdrawing said bit or augur, the same being thirty or thirty-two inches in length, being too long to be used in said work, by reason thereof and on account of the defectiveness of said bit or augur as hereinbefore set forth and described rendered the same a dangerous instrument or appliance when used in said work which was known to defendant or should have been known by the exercise of ordinary care and diligence, caused the arm of said helper to come in contact with an upright beam or pole projecting above said platform or scaffold some twenty-four or thirty inches high with such force that the hand of said helper was disengaged or knocked loose from the handle of said Hammer or Air Drill thereby causing said Hammer or Drill to fall with great force and violence and the bit or augur attached thereto was caused to come in contact with the ankle of plaintiff's right foot and passing entirely through said foot * * *"

Both counts alleged the damages resulting to plaintiff in the same language. Each count alleged that the augur in passing through plaintiff's foot cut ligaments, nerves, arteries and muscles and shattered bones, by which plaintiff became lame, the toes of his foot being stiff and his foot shriveled; that he has practically lost the use of that foot, and will be totally incapacitated to do his customary work, that of a carpenter, for the remainder of his life, which could not reasonably be less than 31 years;

that he has suffered, now suffers and will suffer during the remainder of his natural life great physical and mental pain; that said injury caused plaintiff to lose a year from his vocation, and to expend large sums of money and to obligate himself for medical and doctor's bills; and that his earning capacity has been greatly reduced.

A demurrer to the declaration was overruled and the defendant was given until the following rule day in which to plead to the declaration.

To the declaration the defendant filed pleas of (1) not guilty; (2) contributory negligence; (3) assumption of risk; (4) assumption of risk in connection with the use of simple tools and (5) that plaintiff's injuries were caused by the act of fellow workers.

Plaintiff moved to strike pleas numbered three and four; and also filed a motion for compulsory amendment of plea number two.

The motion to strike pleas numbered three and four was granted. The motion for compulsory amendment of plea number two was granted and the defendant allowed ten days in which to amend.

The defendant did not amend the second plea, and the case went to trial on the issues made by the first and fifth pleas. After hearing the evidence, and being instructed as to the law, the jury returned a verdict in favor of plaintiff and assessed his damages at $4500.00. Judgment was entered upon the verdict. Motion for new trial was denied. From the final judgment, writ of error was taken.

It is contended that the court erred in granting the motion for compulsory amendment to the second plea. The second plea was worded in this language: "That the plaintiff negligently and carelessly used the instrumentalities described in said declaration, and that said negligence and

carelessness by the plaintiff contributed to the proximate cause of his injury."

We have heretofore decided that general averments of negligence in a declaration without specifying the particular act complained of will be sufficient, and consequently there is no good reason to hold that what would suffice as an allegation of negligence in a declaration should not also suffice as an allegation of contributory negligence in a plea. Brinson v. City of Mulberry, 104 Fla. 248, 139 So. 792, and authorities there cited.

While the granting or denying of a motion for compulsory amendment is a matter resting within the discretion of the court, it is a discretion which must be exercised within the rules of good pleading, and is·subject to review by the appellate court. An order for compulsory amendment will not be disturbed. unless it is plainly made to appear that there has been an abuse of the judicial discretion. Compulsory amendments are allowable only when a pleading is so framed as to prejudice, or embarrass or delay the fair trial of the case. Sec. 4296 C. G. L. A motion for compulsory amendment should state that the pleading is so framed as to prejudice, embarrass or delay the fair trial of the case. Cook v. Hopkins, 98 Fla. 847, 124 So. 441, and authorities there cited. The motion in this case did not state that the plea was so framed as to prejudice, embarrass or delay a fair trial of the case, nor could it have accurately so stated. We think, therefore, that this plea of contributory negligence was good as it stood, and the court abused its judicial discretion in granting the motion for compulsory amendment of this plea.

The next question presented is whether it was actionable negligence on the part of the defendant for Bass to straighten out the bent bit or augur given him by plaintiff, so that no bend could be detected.by the naked eye, and return

it and tell plaintff it was safe to use, and plaintiff in using it became injured.

For the purposes of answering this question, it is assumed by plaintiff in error that Bass was a vice principal of the defendant. Plaintiff alleged in his declaration that the defendant was negligent in furnishing him with a 30-32 inch bit or augur with which to bore a hole of approximately half that depth, and in furnishing him with a bit or augur that was defective in that it had been bent by plaintiff's fellow worker, had been taken to Mr. Bass, who straightened it out and returned it to plaintiff and told him it was safe to use.

A master is legally bound to furnish his servant with a reasonably safe place in which to work, and with reasonably safe tools with which to do the work. 3 Labatt's Master & Servant (2d. ed.) 2390 et seq., Sec. 898, et seq. In order for the master to discharge the obligation to furnish reasonably safe instrumentalities, he must see that the instrumentalities furnished are in proper condition, which will not endanger the safety of the employed, or expose the employees to risks beyond those incident to the employment. 3 Labatt's Master & Servant (2d. ed.) 2437, Sec. 917.

"It is frequently said that negligence is imputable to a master whenever an instrumentality is of such a character, or his business is carried on in such a manner, as to subject his servants to dangers which are described as being unnecessary, or needless, or unreasonable, or unnecessary and unreasonable, or unreasonable and extraordinary, or extraordinary, or greater than is reasonable and proper. It is manifest that the question, What shall be regarded as a necessity sufficient to justify the master in using any particular instrumentality? is one of fact, and must be decided with reference to the evidence presented in each particular case. But a general principle which is often helpful in

determining whether or not a defendant is culpable is that a convenience may be so great as to be regarded as a practical necessity. The fact that a slight inconvenience or expense may have been saved by the adoption of a certain plan can have no weight in a matter affecting the safety of workmen. The master, therefore, is bound to remedy dangerous conditions whenever that can be done at a comparative small cost." 3 Labatt's Master & Servant (2d. ed.) 2442, Sec. 918.

There was evidence to the effect that it was customary in this work of boring holes in the side of pontoons to use a bit or augur of 16 inches in length only when boring a 14 inch hole. It is possible that if the bit or augur had been 14-16 inches shorter than it was, plaintiff might not have been injured, even though the air drill fell in exactly the same manner as it did. Failure to furnish a shorter bit or augur was evidence tending to show negligence on the part of the defendant. The extra cost of a bit or augur of the proper length is negligible in comparison to the added safety afforded the employed.

It appears from the evidence that Mr. Bass straightened out the bit or augur that had been bent and handed it back to plaintiff and told him it was safe to use. Plaintiff testified that he had worked at this job about 8 or 10 days prior to the accident, and had never operated a compressed air drill before starting on this job; that he used the repaired drill or augur upon Mr. Bass' assurance that it was safe to use; that when he and his helper attempted to withdraw the air drill from the hole it had bored, the defective condition of the bit or augur caused it to shimmy and prevented it from withdrawing freely; that it later withdrew from the hole in such a sudden manner that it caused his helper's arm to hit an overhanging scantling and lose his grip on the opposite handle of the air drill, throwing the

entire weight of the machine, approximately 55 pounds, into plaintiff's hands, and he being unable to hold it erect, it fell towards his right leg, and as it fell the power was by the falling of the instrument turned from reverse to forward, and the augur or bit was sent through his right foot. Failure of the defendant to furnish a reasonably safe bit or augur to work with in drilling holes, that is one that would not shimmy and become hung when the operator attempted to withdraw it from the hole, resulting later in its sudden withdrawal and consequent injury of the operator, was evidence tending to show that the defendant was negligent. The cost of furnishing an entirely new bit or augur to plaintiff when he turned in the bent one, is negligible in comparison to the added safety afforded him in this type of work.

It seems that this defective condition of the bit or augur together with its excessive length was strong evidence indicating negligence on the part of the master, and the question of negligence was properly submitted to the jury to decide. The jury's finding of negligence was substantiated by the evidence before them. This finding may be changed when the case is re-tried below because the issue of contributory negligence will be before them then.

It is contended that the air drill was a simple tool, and that the same rules do not apply with regard to the master's duty to the employed in the use of simple tools as in the use of other instrumentalities.

The Supreme Court of Michigan, in the case of Sheltrown v. Michigan Central R. Co., 245 Mich. 58, 222 N. W. 163, laid down the following rule to aid in determining what is a simple tool:

"What is, or is not, a simple tool under the rule stated, and the duty to inspect if it is not, depends much upon the use to which it is to be put by the employee. His age, his

incapacity to appreciate danger, the nature of the employment, his familiarity with the work to be done—these and many other things may be considered in determining the obligation resting on the employer to make inspection. His nonliability in such cases rests upon the assumption that the employee is in as good, if not better, position to observe the defect as the employer. Meyer v. Ladewig, 130 Wis. 566, 110 N. W. 419, 13 L. R. A. (N. S.) 684. The test depends, not only on the simplicity of construction, but also somewhat on whether the tool is subjected to any other stress than the muscular effort of the person using it."

Although a bit or augur when inserted in a hand brace and operated by hand may be a simple tool, yet under the rule laid down above, the bit or augur loses its simple character when inserted in an air drill, which is a machine propelled by compressed air, and operating at a high rate of speed, with devices thereon to propel the bit or augur forward or backward or to stop it, and is used in that air drill.

The master is not absolved, in all cases, from liability for injury to his servant from the use of a simple tool, neither is the servant required to inspect the tools and appliances furnished him to seek out latent defects that would make their use hazardous. He is only required to look out for defects that are patent to ordinary observation, for all others he has a right to rely on his master to correct. C. F. Hamblen, Inc., v. Owens, 127 Fla. 91, 172 So. 694. The testimony shows and the brief of plaintiff-in-error admits that this bit or augur had been straightened by Bass and that the defect therein could not be detected by the naked eye. Plaintiff testified that he was not aware of the danger to himself attendant upon the use of this bit or augur in that condition. So even if it could be said that this air drill was a simple tool, yet the master would be responsible for any injury resulting to an employee from the

use thereof, because the defect complained of was not patent, and the employed had a right to rely on his master to remedy such defect.

It is contended that there was no evidence to show that Virgil Bass was vice principal of the defendant, and that the court should have instructed the jury that Virgil Bass was not the vice principal of the defendant.

In the case of Sutton Brothers v. Hancock, 105 Fla. 497, 141 So. 532, we laid down the following rule to determine whether an employee was or was not a fellow servant of an injured employee:

"In McLaine v. Head & Dowst Co., *supra,* it was held that one person suffers injury through the negligence of another in the same service, the question whether they are fellow servants within the rule exempting the master from responsibility is not determined by the fact that they were engaged in a common employment under the same general control and paid by the same principal, but depends upon whether the negligent servant, in the act or omission complained of, represented the master in the performance of any duty owed by the latter to the person injured. In other words the responsibility of the master 'is determined by the nature of the act in question, and not by a difference in rank or grade of service between particular servants.' "

The rule as to the liability of the master both on account of the negligent act and of the official position of the negligent servant, is stated in Labatt's work on Master & Servant, as follows:

"The performance of non-delegable duties is not infrequently intrusted to some employee who controls a larger or smaller number of subordinates. It follows, therefore, that, if such an employee causes injury to one of his subordinates by a delinquency in respect to one of those duties,

and the nature and extent of the control exercised by him is such as to constitute him a vice principal, the master's liability may be inferred indifferently from his official position or from the character of the negligent act. This situation may present itself both in jurisdictions where the mere exercise of control is deemed to confer representative capacity, and in jurisdictions where such capacity is admitted only in the case of agents managing an entire business, or a distinct department thereof." 4 Labatt's Master & Servant (2d. ed.) 4432, Sec. 1484.

Plaintiff testified that Virgil Bass was the lay out man or foreman on that side of the pontoon where he worked, and gave orders there; that from the time he was turned over to Virgil Bass he took orders from him; that Virgil Bass gave him an air hammer or air drill and told him to work with it; that on the morning of the injury, Virgil Bass gave him the bit or augur, 30-32 inches in length and that had been straightened and told him it was safe to use. M. J. Dixon, foreman of the defendant, testified that Virgil Bass had 6 to 8 men under him; that he instructed Bass what to do, and Bass instructed the men what to do. Fred Greer, plaintiff's helper, testified that Virgil Bass was the one who gave the men instructions what to do. Under the rules as laid down above, this evidence was sufficient to submit to the jury the proposition as to whether or not Virgil Bass was a vice principal of the defendant, and the court correctly submitted that issue to the jury.

It is contended that plaintiff, by using this bit or augur in the air drill, assumed the risk of all dangers that it entailed.

The law of assumption of risk will be more fully discussed in disposing of the next succeeding question. But suffice it to say at this point that there was evidence to show that plaintiff had never operated an air drill before taking

this job, that he did not appreciate the danger attendant upon the use of this bit or augur in the air drill, and that he relied upon the assurance of Virgil Bass, the lay out man, that it was safe to use. The unnecessary length of the bit or augur as well as its defective condition were faults in the instrumentality employed. Whether plaintiff assumed the risk of using this instrumentality was a question for the jury to determine under proper instructions.

It is contended that the court erred in charging the jury as follows on the assumption of risk:

"The court charges you as to each of these defenses (assumption of risk and fellow servant doctrine) interposed by the defendant that they are affirmative defenses, and that the duty rested upon the defendant to exercise reasonable care and diligence to provide the plaintiff with a reasonably safe place in which to work; with reasonably safe machinery, tools and implements to work with; with reasonably safe materials to work upon, and with suitable and competent fellow servants to work with him, and the court charges you that if you believe from the evidence that the defendant failed to perform and discharge this duty which it owed to the plaintiff, and that the defendant was negligent in this regard, and the plaintiff, as a direct and proximate result of said negligence, sustained injury, then the defendant is not entitled to a verdict on the ground of assumption of risk by the plaintiff. In other words, before the defendant is entitled, to take advantage of its plea of assumption of risk on the part of the plaintiff, it must appear from the evidence that the defendant had discharged the duties required of it under the law, and owing to the plaintiff, as hereinabove set out."

The last sentence of this charge, which it is contended is erroneous, states, in effect, that in no case can an employee assume the risk of his employment until the master

has first performed the duties imposed upon him by law. The doctrine of assumption of risk extends only to those risks and hazards ordinarily and usually incident to the employment voluntarily engaged in, that is, risks that the employee knows exist or may know to exist by ordinary care. It does not extend to risks created by the negligent act of the master. Wilson & Toomer Fertilizer Co. v. Lee, 90 Fla. 632, 106 So. 462. It is not made to appear wherein the charge given was erroneous, so we hold that, as against the contention of plaintiff in error, it correctly states the law on the subject.

It is contended that the court erred in charging the jury as follows:

"I further charge you that when a servant or employee, inexperienced in the use of any particular machinery, undertakes at the request of the master or those standing in his place and stead, to use machinery, tools and appliances, even though he had seen such used before, but had no knowledge of the danger or dangers attending its use, and the master does not instruct him as to the danger or the peculiarities of the machinery, tools and appliances that may cause injury, and the servant is injured without fault of his own, then the master would be liable for any injury or injuries or damage arising out of or from the use of such tools, appliances and machinery so furnished by the master."

This is a correct instruction as to the law, because in the case of German American Lumber Co. v. Brock, 55 Fla. 577, 46 So. 740, we stated the rule in almost that same language under the fourteenth headnote. We have likewise held that to be the rule in German American Lumber Co. v. Hannah, 60 Fla. 70, 53 So. 516, 30 L. R. A. (N. S.) 882; Cooperative Sanitary Baking Co. v. Shields, 71 Fla. 110, 70. 934; Goulding Fertilizer Co. v. Watts, 63 Fla. 155,

58 So. 362; Southern States Power Co. v. Clark, 118 Fla. 521, 159 So. 881. The contention that this instruction was confusing, unnecessary and erroneous, is without merit.

The court charged the jury, in effect, that in the absence of actual knowledge, or in the absence of facts which would charge the employee with knowledge of defects in the machinery furnished by the master, the employee would have the right to assume that the master had exercised due care in fulfilling his duty to protect the employee from injury, and the employee is not bound to exercise ordinary care to see that the master has performed his duty. The correctness of the instruction is not questioned; but it is contended that the court erred in giving the instruction because there was no evidence that plaintiff was without knowledge or without facts which would charge him with knowledge of the defects in the instrumentality used. The contention is not well founded, because there was evidence to show that though plaintiff knew he was handed the same bit or augur that had been bent and straightened. and was told to use it and that it was safe to use, yet he did not know of its defective condition so as to appreciate the danger attendant upon its use. An employee does not assume the risk arising out of defective appliances provided by his employer, unless his employment was of such a nature as to bring to his attention and cause him to realize and comprehend the dangers incident to the use of such appliances. Wilson & Toomer Fertilizer Co. v. Lee, 90 Fla. 632, 106 So. 462.

The court charged the jury, in effect, that if the plaintiff was injured by the concurring negligence of the defendant and the plaintiff's fellow worker, plaintiff could recover. The correctness of the instruction is not questioned, but it is contended that there was no evidence upon which the charge to the jury could be predicated, because Virgil Bass

could not be a vice principal of the defendant and a fellow servant of plaintiff at one and the same time. This contention is not sound because it does not take into consideration the fact that Fred Greer was the fellow servant working with plaintiff at the time of his injury. There was evidence tending to show that Virgil Bass was vice principal of the defendant and that Fred Greer was a fellow servant of the plaintiff, and considering the facts in that light, there was evidence upon which the charge could be given.

The court also charged the jury, in part, as follows:

"* * * then I charge you that if you believe he was advised by Bass, the foreman, or lay-out-man, his superior, in charge of said carpenters, that he, Bass, had personally straightened said bit or augur, * * *"

It is contended that this part of the charge above quoted was erroneous because it in effect instructed the jury that Virgil Bass was the vice principal of the defendant. There was evidence to the effect that Bass was the man in charge of plaintiff and his fellow workers with authority to hire and fire them, but there was also evidence to the contrary. There was uncontradicted evidence that Bass was a "lay out man," so the instruction in that regard was free from error. M. J. Dixon, who said he was the foreman of the defendant, testified that Bass was the leader of the men; that he gave Bass orders what he wanted done, and Bass would explain to the men how to do it, and that Bass had no authority to hire or fire any one. The statement that Bass for the *foreman,* or the *superior* of plaintiff, or *in charge of the carpenters,* could more properly have been omitted from the instruction than given, because there was evidence tending to show that Bass did not have the capacity or authority attributed to him.

For the errors pointed out herein, the judgment below should be and is hereby reversed.

672

Reversed.

ELLIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur in the opinion and judgment.