# Richmond

ROBERT H. THACKER v. ALEXANDER R. KLOTZ.

April 8, 1940.

Record No. 2203.

Present, Campbell, C. J., and Holt, Gregory, Browning,
Eggleston and Spratley, JJ.

The opinion states the case.

*W. J. Gibson* and *Frank P. Moncure,* for the plaintiff in error.

*W. W. Butzner,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

The defendant, Alexander H. Klotz, of Fredericksburg, dismantles cars and sells their parts for what they will bring. The plaintiff, Robert H. Thacker, worked for him, and on November 12, 1937, while undertaking to detach a rear wheel from a Model A Ford, was struck by a splinter of steel and blinded in his left eye. In compensation he obtained a verdict of $1,000. That the trial court set aside and entered final judgment for the defendant.

Thacker had worked with Klotz for about three years. He had been a farm laborer; he had driven an automobile; he had worked in a nursery; he had dug ditches and had helped to lay sewers—in short, he did anything which came to hand, but he was not a skilled mechanic and knew nothing about metals and their tempers.

At the time of the accident, he was using two hammers— one weighed about three-quarters of a pound and the other about three pounds. This was the manner of their use: A

rounded end of the small hammer was placed against the axle end and struck with the larger one. This would jar the wheel loose, and it was in doing this that a splinter of steel from the hammer slivered off and struck and blinded his left eye.

There are two other accepted methods in general use in Fredericksburg to remove automobile wheels. It is done with a "wheel-puller," a device not dangerous at all when properly used. It is done also with what is known as a "wheel-knocker," which has a soft face and is not likely to splinter. That done with hammers is more expeditious and less expensive, but it is also less safe than either of the other two methods.

■■■■■ It is everywhere conceded that it is the duty of a master to exercise ordinary care in supplying his servant with sound and safe working appliances, and in determining whether or not this duty has been discharged, we may look to the practice of other employers engaged in like undertakings in his community. Thompson on Negligence, sec. 7776. While this rule is not in dispute, it is said that it is subject to an exception as fixed as the rule itself; that is to say, to the "simple tool doctrine," which we have adopted and which we have stated in these terms:

" * * * but it is well settled that a master is under no obligation to his servants to inspect during their use those common tools and appliances with which every one is conversant, nor is it the master's duty to repair defects arising in the daily use of those simple appliances." *Southern Railway Co.* v. *Snow,* 117 Va. 627, 85 S. E. 488.

An examination of authorities cited in Labatt on Master & Servant (2d Ed.) vol. 3, sec. 924A, shows that it is not a uniform rule, nor do definitions as to what is a "simple tool" agree. As restated by Labatt, it reads:

"It does not seem entirely logical to say that the master is under no obligation to exercise ordinary care to furnish reasonably safe appliances, simply because those appliances chance to be of a simple character. The more reasonable view would seem to be to place the non-liability of the mas-

ter upon the ground that any defect in a simple tool must be obvious to the servant, and any risk of danger therefrom must be held to be assumed by him; and this, indeed, is the view taken very frequently."

■ In determining if a tool falls within the definition of the doctrine, we look not merely to the tool itself but also to its intended uses, and to the skill and intelligence of the servant to whom it is entrusted. It does not follow that a hammer suited to one purpose is suited to another. Their tempers should vary according to their intended uses.

In *Sheltrown* v. *Michigan Central R. Co.*, 245 Mich. 58, 222 N. W. 163, 165, the court said:

"What is, or is not, a simple tool under the rule stated, and the duty to inspect if it is not, depends much upon the use to which it is to be put by the employee. His age, his incapacity to appreciate danger, the nature of the employment, his familiarity with the work to be done—these and many other things may be considered in determining the obligation resting on the employer to make inspection. His nonliability in such cases rests upon the assumption that the employee is in as good, if not better, position to observe the defect as the employer. *Meyer* v. *Ladewig,* 130 Wis. 566, 110 N. W. 419, 13 L. R. A. (N. S.) 684."

To the same effect see *Tampa Shipbuilding & Engineering Co.* v. *Thomas,* 131 Fla. 650, 179 So. 705, 711, 712, Appeal & Error, section 960(2).

An examination of decided cases in Virginia shows that none of them necessarily decides this under review.

In *C. & O. Ry. Co.* v. *Sparrow's Adm'r,* 98 Va. 630, 37 S. E. 302, it appears that a rope connected with a bolt broke during a flood. It was worn and unsafe, and plaintiff's decedent knew of its condition. The court said that this danger was open and obvious, and since it was open and obvious, the plaintiff could not recover.

In *Southern R. Co.* v. *Snow,* 117 Va. 627, 85 S. E. 488, Snow was a station agent who had occasion to move a truck on the station platform. There were two trucks available. One was in a dilapidated condition. This Snow knew. The

court said that this knowledge was enough to put him on notice as to the truck's condition.

In *Clinchfield Coal Corporation* v. *Cruise's Adm'r,* 117 Va. 645, 86 S. E. 135, Cruise was killed by a runaway car whose brakes were defective, and this he knew, or should have known. He assumed the risk and could not recover.

In *Southern Railway Co.* v. *Burford,* 120 Va. 157, 90 S. E. 616, plaintiff was a section hand and was engaged in cutting a steel rail with a chisel, the head of which had mushroomed from many blows and was liable to splinter. The court said that the danger was open and obvious.

In *C. & O. Ry. Co.* v. *Mizelle,* 136 Va. 237, 118 S. E. 241, it appears that Mizelle was a mechanic of seventeen years experience. He was engaged in drilling a hole in a boiler; the drill stuck, and he hit it with a hammer. The court said: "It is perfectly apparent that the plaintiff was guilty of gross negligence, for it appears that the hammer with which he struck the point of the drill was a hard steel hammer, which injured the drill and was not intended to be thus used." This mechanic of seventeen years experience knew that a proper hammer to be used for that purpose should have been "made of either lead or copper, or both, or some material softer than steel." In that case it was held that the court erred in refusing to give this instruction:

"The court instructs the jury that if they believe from the evidence that the plaintiff was operating a drill upon the occasion of his injury and that the drill became jammed in the engine frame through which the plaintiff was drilling a hole, and that the plaintiff in order to dislodge the drill struck it with a hard steel hammer, causing a piece of steel to fly off and injure the plaintiff's eye, and that the plaintiff knew or ought to have known that such a hammer was not the proper appliance to be used for this purpose and that the same was liable to cause injury both to the operator and the drill, then the plaintiff assumed the risk of the injury he received and they must find for the defendant."

*Mutatis mutandis* and applying it to the case under review it might have read: "If the plaintiff did not know that this

hammer was unsuited for this use and was not charged with such knowledge, then he might recover."

In *Colonna Shipyard* v. *Bland*, 150 Va. 349, 143 S. E. 729, 59 A. L. R. 497, it was held that a ladder leading down into the hold of a ship was not a simple tool.

These cases in which a recovery was denied really turn upon an assumption of risks rather than upon the simple tool doctrine.

*McPhail* v. *Boston & M. R. R.*, 280 Mass. 113, 181 N. E. 739, is an exceedingly instructive and well considered case. There steel wedges were driven into a boiler tube. These wedges were struck by a steel hammer and a bit of steel from one of them put out the plaintiff's eye. The court said that a jury might have found the defendant negligent in that this pin was harder or more brittle than it should have been.

If we are to believe the plaintiff's evidence, and the jury did believe it, Thacker knew no more about the tempers of metals and their characteristics than he did about the fourth dimension. All hammers looked alike to him. Their shapes might vary and their weights, but that was as far as his knowledge went.

Klotz, for reasons of expedition and economy, did not do this work as it was commonly done in Fredericksburg. If he adopted a method less safe, he should have at least furnished tools which minimized the danger. His liability for failure to do this was at least a jury question and not one of law for the court.

The jury's verdict must be reinstated and judgment given thereon.

*Reversed.*

GREGORY, J., dissenting.